UNITED STATES of America, Appellee,

v.

Lloyd WRIGHT, Appellant.

UNITED STATES of America, Appellee,

v.

Marcus FRANKLIN, Appellant.

UNITED STATES of America, Appellee,

v.

Leonard CROSS, Appellant.

Nos. 77–1277, 77–1297 and 77–1298.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 15, 1977.

Decided Oct. 14, 1977.

David M. Duree, St. Louis, Mo., for appellant Lloyd Wright.

Mark S. Fredman, St. Louis, Mo., for appellant Marcus Franklin.

Steven G. Schumaier, Clayton, Mo., for appellant Leonard Cross.

Frederick R. Buckles, Asst. U. S. Atty., St. Louis, Mo., argued, Barry A. Short, U. S. Atty., on brief, for appellee.

Before VAN OOSTERHOUT and MATTHES, Senior Circuit Judges, and STEPHENSON, Circuit Judge.

MATTHES, Senior Circuit Judge.

Lloyd Wright, Marcus Franklin, and Leonard Cross were jointly indicted, tried, and found guilty of robbing the Charter Bank of Jennings, Missouri, and of assaulting and putting in jeopardy the lives of three employees of the bank by means and use of a dangerous weapon, in violation of 18 U.S.C. § 2113(a)–(b).[1] Appellants are individually represented in this court by the same counsel who represented them at trial. They do not challenge the sufficiency of the evidence, and, as is true in numerous criminal appeals, they make no pretense that they are innocent. Rather, appellants claim that prejudicial error pervaded the proceeding, entitling them to another trial. Thus, the posture of this appeal dispenses with the necessity of a protracted statement of the evidence.

The holdup took place on the morning of January 5, 1977. The uncontradicted evidence establishes that four individuals disguised by ski masks or stockings covering their faces entered the bank. One of them stationed himself inside the front door holding an operable shotgun in his hands while the other three vaulted over the counter and purloined approximately $8,000 from three female bank tellers. Some of the currency taken by the robbers was so-called bait money. Threats were directed against the bank employees and customers by the robbers. No one resisted or attempted to interfere while the holdup was in progress.

---

1. Michael Stewart was indicted with appellants, but he pled guilty at or shortly before the commencement of the trial and is not a party to this appeal. Stewart did not testify for either the government or the appellants.

The robbers made their getaway in an automobile, but their freedom was short-lived. That same afternoon and evening all four were arrested. Bait money was found in the possession of one or more of appellants. In addition, other incriminating tangible evidence was seized and incriminating statements were made.

None of the appellants testified at the trial. Franklin called two alibi witnesses in his defense, but the jury obviously discredited their testimony.

Appellants press six issues:

I. Denial of a pretrial motion for severance.

II. Error in the instructions.

III. Failure to grant a mistrial after it was discovered that several of the jurors might have seen the appellants in handcuffs.

IV. Failure to grant a motion to suppress items seized in a warrantless search of appellant Cross' home.

V. Denial of the cross-examination of a government witness relating to the witness' prior inconsistent statement.

VI. Denial of appellants' motion to recall a government witness for further cross-examination.

We will elaborate upon the foregoing contentions in our discussion and rejection of all of them.

# I

## Severance Issue

Appellants assert that a severance was mandated because evidence was admitted in the joint trial which was material and prejudicial to each appellant and would not have been admitted against them in separate trials.

Fed.R.Crim.P. 8(b) provides that two or more defendants may be charged in the same indictment if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense. It is settled doctrine, and logic dictates, that a broad interpretation of Rule 8(b) is encouraged in the interest of more efficient administration of criminal trials. *Haggard v. United States,* 369 F.2d 968, 973 (8th Cir. 1966), *cert. denied,* 386 U.S. 1023, 87 S.Ct. 1379, 18 L.Ed.2d 461 (1967). The root question is whether any of the defendants was prejudiced by the denial of a severance. The rule regarding prejudice is clearly stated in an opinion authored by then Chief Judge Van Oosterhout:

"The existence of prejudice, in large measure, depends upon the facts and circumstances of each case, * * * and it is axiomatic that the granting of a severance is within the discretion of the trial judge. * * * The burden of demonstrating prejudice is a difficult one, and the ruling of the trial judge will rarely be disturbed on review. * * * The defendant must show something more than the fact that 'a separate trial might offer him a better chance of acquittal.'" (citations omitted.)

*Williams v. United States,* 416 F.2d 1064, 1070 (8th Cir. 1969), *quoting Tillman v. United States,* 406 F.2d 930, 934–35 (5th Cir.), *vacated in part on other grounds,* 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969). The court in *Tillman* relied partially on *Butler v. United States,* 317 F.2d 249 (8th Cir.), *cert. denied,* 375 U.S. 838, 84 S.Ct. 77, 11 L.Ed.2d 65 (1963), where we stated that "[t]he trial court's refusal to order separate trials or grant severance is not grounds for reversal unless the record indicates an abuse of discretion." *Id.* at 264, *citing Opper v. United States,* 348 U.S. 84, 95, 75 S.Ct. 158, 99 L.Ed. 101 (1954); *see also United States v. Schmaltz,* 562 F.2d 558, at 560 (8th Cir. 1977); *United States v. Losing,* 560 F.2d 906 (8th Cir. 1977); *United States v. Jackson,* 549 F.2d 517, 523–24 (8th Cir.), *cert. denied,* 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977).

The appellants, especially Wright and Franklin, claim that they were prejudiced because certain items seized from appellant Cross' home were admitted against all of them. They rely upon *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1967). However, *Bruton* is inapposite. Furthermore, as Judge Lay

aptly observed in *Haggard v. United States, supra,* in dealing with the severance issue.

> [n]or do we think that "participation" in the "same series" requires "participation in each transaction of the series." * * * The language of Rule 8(b) assumes certain evidence may be admitted against one defendant not necessarily applicable to another.

*Id.* at 973. This record convincingly and unequivocally demonstrates that the three appellants and Stewart actively participated in the actual robbing of the bank. Viewing the evidence in the light most favorable to the verdict, the jury was fully justified in finding that they acted in concert from the beginning of their illegal endeavor. Beyond any speculation, this was a classic case for joinder.

## II

### Instructions

The instructions to the jury are challenged on several grounds. Appellants complain that some of the instructions given were erroneous and prejudicial. They also contend that the district court erred in refusing to give certain requested instructions. We hold that the district court's charge to the jury was proper and sufficient.

■ Appellants' contention that the district court's instructions "undermine[d] the presumption of innocence" borders on the frivolous. The court repeatedly informed the jury that the government had the burden of proving guilt beyond a reasonable doubt. Moreover, the substance of the instruction on reasonable doubt has recently been approved by this court. *United States v. Knight,* 547 F.2d 75, 77 (8th Cir. 1976); *United States v. Conley,* 523 F.2d 650, 655 (8th Cir. 1975), *cert. denied,* 424 U.S. 920, 96 S.Ct. 1125, 47 L.Ed.2d 327 (1976).

■ Appellants also contend that the court committed reversible error in instructing the jury on aiding and abetting, asserting in support of that argument that there was no evidence to support such a charge. We disagree. As shown above, it stands uncontroverted that appellants and Stewart committed the robbery. During the affray, each played a slightly different role, but manifestly their objective was to hold up the bank employees at gunpoint. They successfully carried out their mission, and in doing so, threatened bank employees and customers and placed their lives in jeopardy. Considering the interplay of the four participants and their roles before, at, and subsequent to the holdup, this was a proper case for submitting the aiding and abetting element. *United States v. Marx,* 485 F.2d 1179, 1185 (10th Cir. 1973), *cert. denied,* 416 U.S. 986, 94 S.Ct. 2391, 40 L.Ed.2d 764 (1974); *Caton v. United States,* 407 F.2d 367 (8th Cir.), *cert. denied,* 395 U.S. 984, 89 S.Ct. 2149, 23 L.Ed.2d 773 (1969); *see also Cunha v. Brewer,* 511 F.2d 894 (8th Cir.), *cert. denied,* 423 U.S. 857, 96 S.Ct. 108, 46 L.Ed.2d 83 (1975).

■ Throughout the trial, appellants unsuccessfully attempted to show that Alma Rice, a key government witness and a cousin of appellant Wright, had been a party to the crime. They now insist that the district court erred in not giving an accomplice instruction concerning her testimony. This challenge must fail since there is a complete lack of any credible evidence showing that Rice aided and abetted the appellants and Stewart in the robbery. Only two facts link her to the crime: she was in an automobile with appellant Wright on the morning of the robbery, and bait money was found in a purse in her possession when she and Wright were apprehended. But according to her testimony, which apparently the district court credited, she was neither directly nor indirectly involved in the robbery, did not know of appellants' plan to commit the offense, and was unaware of its commission until she was apprehended. Although she did have a purse in her possession when arrested, she testified that the purse was not hers and that she only learned of its contents when it was opened in her presence by one of the arresting officers. In sum, the record does not establish that Rice was an accomplice.

The claim is also made that the district court erred in not giving an informer instruction. We have canvassed the record and fail to find a shred of evidence that any person acted as an informer in this case. The record reveals that appellants and Stewart acted on their own in the perpetration of the offense. Finding no evidence on the accomplice or informer issues, the court properly declined to inject these matters in its instructions. It is settled law, requiring no citation of authorities, that in the absence of evidence the court should not submit an issue to the jury.

We have considered other complaints lodged against the instructions and hold they are without sufficient merit to require discussion. Appellants concede that when reviewing instructions, the court must look at and view the instructions as a whole. *United States v. Nance*, 502 F.2d 615, 619–20 (8th Cir. 1974), *cert. denied*, 420 U.S. 926, 95 S.Ct. 1123, 43 L.Ed.2d 396 (1975). Applying that rule, we have no difficulty in concluding that the court's charge was not infected with prejudicial error and that the jury was not misguided as to the applicable law.

### III

### *Failure to Declare Mistrial*

■ We hold that the district court properly declined to grant a mistrial on the ground that there "was a possibility" that one or more of the jurors may have seen the defendants handcuffed in the custody of the marshall. During the trial, Mr. Buckles, the Assistant U.S. Attorney,[2] in the presence of appellants' counsel and out of the hearing of the jury, stated to the court:

> Shortly after the jury was recessed in this case today, for lunch, Mr. Kupferer [Supervisory Deputy U.S. Marshal] came up and informed me that he thought there was a possibility that in the hallway behind the courtroom as the three defendants in this case were being removed

from the courtroom by the United States Marshals that there was a possibility that one, perhaps more of the jurors, who were farther down the hallway, may have turned around and seen the defendants in the Marshal's custody. I then brought it to the attention of the three defense attorneys involved and suggested they do whatever they want to do with respect to the matter.

After receiving this information, counsel for the appellants unsuccessfully moved for a mistrial. The court offered to voir dire the jury regarding the incident, but this offer was declined by counsel for appellants on the ground that any further reference to the matter might tend to aggravate the situation. The court, out of an abundance of caution, did instruct the jury that "whether or not a defendant is in custody is not to be considered by you in any respect and no inference shall be drawn therefrom." In view of the meager evidence that any juror saw appellants handcuffed while they were being transmitted from the courtroom, and considering the court's instruction, we are convinced that appellants were not prejudiced and that the mistrial was properly denied. Moreover, there is no showing, nor any contention, that the appellants were in shackles or handcuffed at any time while in the courtroom, as was the situation in *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Thus, the incident is more analogous to the events complained of in *United States v. Chapman*, 513 F.2d 1262 (6th Cir. 1975), and *United States v. Shaver*, 511 F.2d 933 (4th Cir. 1975). Both of those cases held that prejudicial error did not result because the defendant or defendants were seen in handcuffs by one or more jurors.

### IV

### *Failure to Suppress Items Seized In Search of Appellant Cross' Home*

On the day of the robbery, FBI agents searched the home where appellant Cross, his wife and child resided. The property

---

**2.** The record shows that but for the fairness of the Assistant U.S. Attorney, counsel for appel-

lants probably would not have known of the incident.

was owned by Cross' mother, Mrs. Willie V. Wall, who also lived there. One of the agents testified unequivocally that prior to the search, Mrs. Wall consented orally and in writing to a search of the entire premises. Mrs. Wall also informed the agent that all residents had equal access to and use of all rooms of the house and all articles of furniture therein. Mrs. Wall subsequently denied, however, that she had access to the dresser which her son used and where the incriminating evidence was found.[3]

The district court held a plenary pretrial hearing on the motion to suppress, inter alia, the items seized in the search of the Cross home. In a memorandum opinion the court found that "the search conducted at defendant Cross' home prior to his arrest was proper as his mother had given consent thereto. . . ."

▉ The present case bears a striking resemblance to Maxwell v. Stephens, 348 F.2d 325 (8th Cir.), cert. denied, 382 U.S. 944, 86 S.Ct. 387, 15 L.Ed.2d 353 (1965), relied upon by the district court and authored by Judge, now Mr. Justice, Blackmun. In Maxwell, as here, police officers went to the house where the accused lived with his mother and, with the consent of the mother, obtained a coat belonging to the accused from a closet in the home. The coat contained incriminating evidence. The legal question we were required to resolve was whether Mrs. Maxwell had the authority to permit the search of the accused's clothes closet. Judge Blackmun fully explored the facts and controlling law and concluded the search was valid. As in this case, Mrs. Maxwell had control of the premises and no landlord-tenant relationship existed between Mrs. Maxwell and her son. Here, the evidence showed that appellant Cross occasionally paid his mother for his

family's occupancy of her home, but such contributions were insufficient to bring this case within the ambit of the hotel or rental cases. See Maxwell, supra at 337. Consequently, we are constrained to hold that Maxwell controls this case.[4]

Obviously the district court credited the testimony of the FBI agent in finding that Mrs. Wall had consented to the search. That finding is not clearly erroneous, nor was it induced by a misconception of the applicable law. In view of the relationship of the parties occupying the premises and Mrs. Wall's ownership and control thereof, we hold that she had the legal right to consent to the search. Consequently, appellants' Fourth Amendment claim must be rejected.

## V

### Denial of Cross-Examination Of Government Witness

Appellants contend prejudicial error was committed in denying appellants the right to cross-examine Alma Rice about her alleged conviction or guilty plea to a charge of prostitution in Peoria, Illinois. For the reasons stated below, we reject this claim of error. A resume of the relevant proceedings will place this issue in proper perspective.

During the hearing on the motion to suppress, the question of Alma Rice's prior record was raised. The colloquy between the judge and counsel shows that the attorney for one of the appellants and the Assistant U.S. Attorney had made an effort through the FBI and Peoria law enforcement officers to determine whether Alma Rice had been convicted of any offense in general, and prostitution in particular.

---

3. At the conclusion of the hearing on the motion to suppress evidence, the attorney for appellant Cross withdrew his motion to suppress with respect to all items seized during the search except for a notebook and a knotted lady's stocking.

4. See also United States v. Peterson, 524 F.2d 167 (4th Cir. 1975), cert. denied, 424 U.S. 925, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976), which dealt

with the consent issue. The Peterson court followed our Maxwell case and additionally held that even if the consent to search was unauthorized, the introduction of the seized items was harmless beyond a reasonable doubt because the complaining defendants were inextricably linked to the defendant's participation in the bank robbery by other overwhelming evidence properly admitted at trial.

They found no record of any conviction. The Assistant U.S. Attorney informed the court and counsel that Alma Rice had told him that she had been arrested in Peoria, Illinois "sometime this summer" [1977], and had been charged with prostitution. She was held five days in jail, after which she was told she could go home. Insofar as the record indicates, she did not admit to the Assistant U.S. Attorney or to any other person that she had ever been convicted of prostitution, or for that matter, any offense. Nothing further was developed in the suppression hearing.

During the trial, the question was again raised, out of the hearing of the jury. Another colloquy ensued which again failed to show whether Alma Rice had ever been convicted of any offense. At the conclusion of the discussion, the court decided not to permit further exploration of the prostitution allegation. Appellants contend that the district court's ruling denied them the opportunity to cross-examine the witness regarding her alleged crime and related, and purportedly inconsistent, statements. They argue that they were thereby prevented from impeaching Alma Rice's credibility. We regard the entire matter as "much ado about nothing."

First, as noted, there is not a scintilla of evidence that witness Rice had been convicted of any offense. Appellants' counsel was given full and free opportunity to, and did in fact, make a complete examination of Rice's past record, and came up with nothing. Secondly, we are not convinced that there were any inconsistent statements made by Rice which would constitute grounds for impeachment. She had informed the Assistant U.S. Attorney that she had been arrested in Peoria, detained for five days, and then sent home. Consequently, her later statement denying conviction was not inconsistent with her statement that she had been picked up and detained.

Even assuming that Rice had been convicted of prostitution, the probing which appellants manifestly intended to engage in would have been impermissible. Fed.R. Evid. 609 provides:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination *but only* if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment. (emphasis supplied).

Under Illinois law, prostitution is a Class A misdemeanor. Ill.Ann.Stat. ch. 38, § 11–14 (Smith-Hurd). A Class A misdemeanor is defined as any offense for which a sentence to a term of imprisonment in other than a penitentiary for less than one year may be imposed. Ill.Ann.Stat. ch. 38, § 2–11 (Smith-Hurd). Thus, it is evident from the plain language of Rule 609 that appellants would not have been able to impeach witness Rice, even if they had been able to prove she had been convicted of the offense of prostitution. From all of the foregoing, we are impelled to conclude that the appellants suffered no prejudice from the denial of a roving commission to inquire into the past conduct of witness Rice.

## VI

### Denial of Request to Recall Government Witness for Further Cross-Examination

On the third and final day of the trial, and just prior to the district court's charge to the jury, counsel for appellant Wright informed the court that on the prior evening he had obtained evidence that at or about the time of the hold up, "Alma Rice was the subject of a contract upon her life as a result of some drug habits." This statement was followed by a request to recall Alma Rice for further cross-examination. The court rejected the request on the ground of irrelevancy.

Since Alma Rice was a key government witness, her credibility was a major issue

during the trial. Appellants insist that their inability to recall Alma Rice prevented the defense from developing their theory that she either participated in the robbery or was a knowing and willing accomplice.

■ We are unconvinced by appellants' argument. All that their request reveals is that one of appellants' counsel had obtained some information concerning an alleged "contract upon her life." The source of counsel's information was not revealed, an appropriate offer of proof was not made, and it would seem self-evident that counsel was at best engaging in speculation. Furthermore, the subject into which he seemingly wanted to inquire, in our opinion, would have been collateral to the real issue in question, to wit, whether or not the appellants and Stewart had committed the offense. Appellants concede that the district court has inherent discretion over the conduct of the trial. *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931). Moreover, Fed.R.Evid. 103(a) plainly provides:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, . . .

We are at a loss to understand how the failure to permit Rice to be recalled for what would appear to be a "fishing expedition" could in any respect have affected the substantial rights of any of the appellants.

## VII

### Conclusion

In conclusion, the study of this record convinces us that the appellants received a fair trial and were well-represented by counsel. The court, as well as the Assistant U.S. Attorney, was very careful to protect all of the rights of the appellants. The evidence of appellants' guilt was overwhelming and the trial was free of prejudicial error. Accordingly, the judgments of conviction must be and are hereby affirmed.