COMMONWEALTH *vs.* JEREMY M. FARNSWORTH.

No. 08-P-1968.

Middlesex. November 3, 2009. - January 11, 2010.

Present: GRASSO, BERRY, & MEADE, JJ.

*Practice, Criminal,* Motion to suppress, Assistance of counsel. *Search and Seizure,* Consent. *Constitutional Law,* Search and seizure, Assistance of counsel, Double jeopardy, Confrontation of witnesses. *Controlled Substances.*

In a criminal matter, the judge, in denying the defendant's motion to suppress evidence discovered inside a residence owned by the defendant's mother, did not err in concluding that the mother's consent to the search of her home was given freely, voluntarily, and without coercion [92-93], and that her consent extended to the defendant's bedroom area on the top floor of the home [94].

A trial court judge did not err in denying a criminal defendant's motion for a new trial, in which the defendant alleged that his trial counsel rendered ineffective assistance by failing to challenge, by a motion to suppress, a police detective's initial entry into a home and a subsequent search of a bureau and strong box located in the defendant's bedroom area on the top floor of the home, where the defendant failed to demonstrate that, had such a motion been timely filed, the Commonwealth would not have been able to prove that the initial entry was lawful [94-96] or that the defendant's mother had the authority to consent to a search of the bureau and strong box [96-98].

At a criminal trial, there was sufficient evidence to establish that the defendant constructively possessed the drugs found by police in a bedroom at his mother's house. [98-100]

At a criminal trial, the admission in evidence of a statement made to a police officer by the defendant's mother, in which she stated that the room where police had found controlled substances belonged to the defendant, did not create a substantial risk of a miscarriage of justice, in light of other abundant evidence that established the defendant's dominion and control over the area. [100]

COMPLAINT received and sworn to in the Ayer Division of the District Court Department on March 17, 2006.

A pretrial motion to suppress evidence was heard by *James*

*H. Wexler,* J.; the case was heard by him; and a motion for a new trial, filed on June 20, 2008, also was heard by him.

*Jennifer H. O'Brien* for the defendant.

*Stephen C. Hoctor,* Assistant District Attorney, for the Commonwealth.

MEADE, J. After a jury-waived trial, the defendant was convicted of possession of a class C substance (psilocybin) in violation of G. L. c. 94C, § 32B(*a*), possession of a class D substance (marijuana) with intent to distribute in violation of G. L. c. 94C, § 32C(*a*), doing so in a school zone in violation of G. L. c. 94C, § 32J, and possession of a class D substance (marijuana) in violation of G. L. c. 94C, § 34.[1] On appeal, the defendant claims that (1) his motion to suppress the evidence seized at his house was improperly denied, (2) the judge improperly admitted hearsay evidence at trial, (3) there was insufficient evidence to establish his constructive possession of the drugs found at his house, and (4) his motion for new trial should have been allowed. We affirm.

1. *Background.* a. *The suppression hearing.* We recite the facts taken from the judge's findings, supplemented by uncontroverted facts adduced at the hearing that were explicitly or implicitly credited by the judge, in order to complete the sequence of the events in this case. See *Commonwealth* v. *Butler,* 423 Mass. 517, 518 n.1 (1996); *Commonwealth* v. *Isaiah I.,* 448 Mass. 334, 337-338 (2007).[2] On March 16, 2006, Randy Girard, who was both a fire fighter with the Townsend fire department and a police detective with the Townsend police department, was working in his capacity as a fire fighter. At approximately 11:50 A.M., Girard was dispatched to a residence owned by the defendant's mother, Maureen Farnsworth (Mrs. Farnsworth),

---

[1]The judge allowed a motion for a required finding of not guilty on so much of the complaint that alleged an intent to distribute the class C controlled substance, and the defendant was found not guilty of improperly storing a firearm and possession of a firearm without a firearm identification card.

[2]At the time the motion to suppress was denied, the judge did not make any findings. However, the judge who heard the motion to suppress was also the trial judge and the judge who heard the motion for new trial. In conjunction with the motion for new trial, the judge made findings relative to the suppression issues raised here. The defendant does not take issue with the manner in which the findings were made.

based on a report of smoke inside.[3] Girard drove to the fire station, equipped himself with his fire fighting gear, and went to the Farnsworth residence. When he arrived, Girard entered the front door and immediately smelled an "obvious burning smell." He spoke to Lieutenant Grimley of the fire department, who instructed him to check the walls and ceilings to find the heat source. Girard and other fire fighters spread out through the house to do so.

Girard went down to the basement where there were several rooms, and he felt the walls and ceiling of each room in search of the heat source. In one room, Girard saw a multicolored glass pipe on a night stand.[4] Through his training and experience as a police officer, Girard recognized the pipe to be consistent with pipes commonly used to smoke marijuana. He also recognized, through his training and experience, the appearance of burnt marijuana residue in the pipe. Girard made a "mental note" of the pipe and continued with his fire fighting assignment by checking the fuse panel and walls and ceilings for signs of fire.

Girard moved his search to the top floor of the home via a stairwell in the rear of the kitchen. As he went up the stairs, Girard noticed an open, doorless loft at the top of the stairs. Mrs. Farnsworth identified this area as the defendant's bedroom. A shotgun, unprotected by a trigger lock, was leaning against the wall in the corner of this room. Across this room, Girard noticed another doorway that led to an attic storage area, which contained commonly shared items, such as Christmas decorations. While on the top floor, Girard continued to feel the walls to detect hot spots. While carrying out this duty in the loft area, Girard noticed marijuana on a coffee table, a digital scale on the floor, an opened "home grow closet area" lined with aluminum foil and equipped with marijuana "growing lights," flowerpots, fertilizer, and numerous bongs, which are used to smoke marijuana. He also detected an overwhelming odor of marijuana. Girard touched nothing and continued his job as a fire fighter. Unable to find the source for the burning odor on the top floor, Girard returned downstairs and learned that the source of the burning smell was an old television.

[3]The nineteen year old defendant was not home at the time.

[4]The room appeared to be a bedroom, but it was not being used as such. The bed was "full of stuff," and the room appeared to be more of a storage room than living quarters.

Outside the house, Girard approached Townsend police Sergeants Matson and Johnson, who were directing traffic.[5] Girard told them that while he was searching for the heat source he had seen illegal drugs and an improperly stored shotgun inside the house. Johnson contacted his supervisor to get authorization for Girard to re-enter the home and be paid overtime as a police officer. After receiving that authorization, Girard and Johnson approached Mrs. Farnsworth and identified themselves as police officers. At this point, Girard had removed his helmet and fire fighter's jacket. Girard told Mrs. Farnsworth that he had seen illegal narcotics inside the house in plain view. Johnson and Girard explained that they could obtain a search warrant for the house or search with her consent. They presented Mrs. Farnsworth with a standard consent form, asked her to read it carefully, told her what they were searching for, and told her she did not have to sign the form. The form indicated that Girard was a detective and Johnson a sergeant employed by the Townsend police department. Girard also read the form to her, including the provision that permitted her to refuse consent, and explained that she could be criminally charged for the "various items that were found on the premises." Despite being told about the marijuana and the improperly secured weapon, Mrs. Farnsworth said there was nothing illegal inside her house. She understood her rights, read the form in detail, and voluntarily signed it free of any threats or promises.

After obtaining Mrs. Farnsworth's consent, Johnson, Matson, and Girard entered the house and went to the top floor, where they located and seized the unsecured shotgun. The officers removed it from the house and put it in the trunk of a police cruiser. After securing the firearm, Girard again spoke to Mrs. Farnsworth, who agreed to assist the officers with their search of her home, and she watched them during the entire search.

In the basement, Girard seized the marijuana pipe. Girard then searched the kitchen area, Mrs. Farnsworth's bedroom, and the top floor, where he seized the growing equipment and the other contraband that was present. While upstairs, Mrs. Farnsworth told Girard that although the defendant slept in the top-

[5]The suppression hearing record does not reveal whether these officers were in uniform.

floor area, the entire family stored items in the attic area beyond the defendant's room. She also told Girard that the defendant allowed her access to his room and never excluded her from the area, and that she had access to the entire home.

b. *The trial.* Girard testified at trial, providing much the same account as offered at the motion to suppress hearing and credited by the judge in his findings. Girard's additional trial testimony was as follows. The Farnsworth house is a single-family residence, with a basement and two floors above it, located at 75 Brookline Road in Townsend. Above the basement is the main floor where the kitchen and a master bedroom are situated. The master bedroom contained a full-sized bed and women's clothing that appeared to belong to an adult female. No men's clothing was found in this bedroom.[6] Near the kitchen area is a stairwell that goes down to the basement level and up to the top floor. There are no doors or dividers at the top or the bottom of the stairs. The top floor consists of a storage room and a bedroom. The bedroom area has an open area with a bed, a couch, table, bureaus, a television, and men's clothing and men's boots. Beyond this open area is a doorway that opens up to an attic area. The attic area appeared to be used as storage, because it contained Christmas decorations, household goods, and other miscellaneous items.

In one basement room there was a canopy bed with sheets and bedding covers. Also present were women's jewelry and female clothing.[7] Although two other basement rooms contained mattresses, neither room appeared to be used as a bedroom. In one of these rooms, Girard found the marijuana pipe. There was also a Suzuki dirt bike in the basement that Girard had seen the defendant operate in Townsend on numerous occasions.[8]

In the top floor loft area, Girard saw a baggie containing marijuana sticking out of the top drawer of the bureau. Girard found 21.51 grams of marijuana in the bureau, several marijuana pipes, bongs, a digital scale, and three bags of marijuana. In the area near the couch, Girard found more marijuana, a second

---

[6]No contraband was found on the main floor.

[7]Only Mrs. Farnsworth and her adult daughter were home on the day in question.

[8]The registration for the dirt bike listed 75 Brookline Road in Townsend as the defendant's address.

digital scale, a box of Glad brand sandwich bags, and a strong box. The strong box, with the key in it, contained psilocybin mushrooms and three bags containing 51.24 grams of marijuana. On the coffee table, Girard found a time card with the name "Jeremy" on it, and a note book containing telephone numbers and notes written to the defendant. The phrase "Jeremy loves Danielle" was written all over the inside of the notebook. Nearby was a bed with white sheets and blue pillows. There was also a blue chair with men's clothing on it. Of the three bedrooms in the house, this was the only one with men's clothing in it. On the floor by the coffee table were two "Nintendo-style" video game controllers. On the walls were posters depicting "marijuana symbols," and "half-dressed" women.[9]

2. *Discussion.* A motion to suppress "shall state the grounds on which it is based and shall include in separately numbered paragraphs all reasons, defenses, or objections then available, which shall be set forth with particularity." Mass.R.Crim.P. 13(a)(2), as appearing in 442 Mass. 1516 (2004). "This requirement alerts the judge and the Commonwealth to the suppression theories at issue, and allows the Commonwealth to limit its evidence to these theories." *Commonwealth* v. *Silva,* 440 Mass. 772, 781 (2004). See *Commonwealth* v. *Edwards,* 71 Mass. App. Ct. 716, 719 (2008). In his motion to suppress, the defendant challenged only the voluntariness of his mother's consent and the scope of that consent. He did not question whether his mother had actual or apparent authority to consent.

The motion judge did not err in concluding that Mrs. Farnsworth's consent to search was free and voluntary and extended to every part of the house. See *Commonwealth* v. *Jones,* 375 Mass. 349, 354 (1978); *Commonwealth* v. *Watts,* 74 Mass. App. Ct. 514, 516 (2009) (we afford substantial deference to the motion judge's subsidiary findings of fact and will not disturb them absent clear error). "Our review of the application of constitutional principles to those facts, however, is plenary." *Commonwealth* v. *Kaupp,* 453 Mass. 102, 105 (2009). See *Commonwealth* v. *Catanzaro,* 441 Mass. 46, 50 (2004).

a. *Voluntariness of the consent.* "When the police rely on

---

[9]The Commonwealth also offered police testimony to the effect that the items found in the loft area were consistent with drug distribution.

consent to justify a warrantless entry, under both the Fourth Amendment [to the United States Constitution] and art. 14 [of the Massachusetts Declaration of Rights], the prosecution 'has the burden of proving that the consent was, in fact, freely and voluntarily given.' " *Commonwealth* v. *Rogers*, 444 Mass. 234, 237 (2005), quoting from *Bumper* v. *North Carolina*, 391 U.S. 543, 548 (1968). To carry out that burden, "the Commonwealth must show 'consent unfettered by coercion, express or implied, and also something more than mere acquiescence to a claim of lawful authority.' " *Commonwealth* v. *Voisine*, 414 Mass. 772, 783 (1993), quoting from *Commonwealth* v. *Walker*, 370 Mass. 548, 555, cert. denied, 429 U.S. 943 (1976). "The voluntariness of an individual's consent to a warrantless entry is an issue of fact, and must be examined in light of the totality of the circumstances of the case." *Commonwealth* v. *Rogers*, *supra* at 238. See Smith, Criminal Practice & Procedure § 4.106 (3d ed. 2007).

Here, the evidence at the motion hearing properly supported the judge's finding that Mrs. Farnsworth's consent to the search of her home was given freely, voluntarily, and without coercion. There is no merit to the defendant's claim that his mother's consent was invalid because she could not have understood that Girard had switched roles from that of fire fighter to police officer. The judge's finding to the contrary is fully supported by the record. As the judge found, even though Girard was still in some of his fire fighting gear, he was accompanied by another police officer (Johnson), and they identified themselves to her as police officers. The consent form indicated that Girard was a detective and Johnson a sergeant with the Townsend police department. Girard read the form to Mrs. Farnsworth, and she carefully read the form in detail for herself. He explained to her what he had seen inside and that it would be the object of the search. Even though it was not required, Girard told her that she did not have to sign the form. See *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 229 (1973); *Commonwealth* v. *Rogers*, *supra* at 237 n.4. The mere mention of the possibility of obtaining a search warrant in lieu of obtaining her consent was insufficient to rob Mrs. Farnsworth's consent of its validity. *Commonwealth* v. *Deeran*, 364 Mass. 193, 196 (1973).

b. *Scope of the consent.* The standard for measuring the scope of consent under the Fourth Amendment and art. 14 is that of objective reasonableness, i.e., what would a reasonable person have understood by the exchange between the officer and the individual providing consent? See *Florida* v. *Jimeno*, 500 U.S. 248, 251 (1991); *Commonwealth* v. *Gaynor*, 443 Mass. 245, 255 (2005). Whether the consent giver expressed or implied any limitation on the scope of that consent are questions "in the first instance for the judgment of the police officers to whom the consent is given. The ultimate question is whether, in light of all the circumstances, a man of reasonable caution would be warranted in the belief that some limitation was intended by the consent giver." *Commonwealth* v. *Hinds*, 437 Mass. 54, 59 (2002), cert. denied, 537 U.S. 1205 (2003), quoting from *Commonwealth* v. *Cantalupo*, 380 Mass. 173, 178 (1980). See Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 11-4 (2009-2010 ed.).

Here, the defendant claims that even if his mother's consent to search the home was valid, it did not extend to a search of his top-floor bedroom area. We disagree. As the judge found, Mrs. Farnsworth placed no limitation on her consent to search. She accompanied Girard throughout the house during the search, observed him as he searched in the various locations, and never expressed any limitation or reservation. Indeed, she told Girard that the defendant had never limited her access to his bedroom. Given these record-supported findings, we conclude that the police were justified in believing that Mrs. Farnsworth had placed no limitation on her consent to search the entire home, see *Commonwealth* v. *Sanna*, 424 Mass. 92, 99 (1997), and that in light of all the circumstances, a reasonable person would be warranted in sharing that belief. See *Commonwealth* v. *Hinds, supra.*

c. *Ineffective assistance.* In his motion for new trial, the defendant contends that his counsel was ineffective because he failed to challenge, by a motion to suppress, Girard's initial entry into the house and his subsequent search of the bureau and strong box located within the top-floor bedroom area.[10] We discuss each point in turn.

---

[10]The defendant's motion to suppress challenged the voluntariness of his mother's consent, and her authority to consent, to the search of his bedroom

When a defendant claims ineffective assistance based on his counsel's failure to litigate a motion to suppress, on a subject matter in which the Commonwealth would have had the burden of proof on a timely filed motion, i.e., a consent search, the burden of proof becomes the defendant's. *Commonwealth* v. *Comita*, 441 Mass. 86, 90 (2004). Specifically, where the defendant's new trial motion has shown a viable basis for a motion to suppress, as part of the defendant's burden to prove that there was a likelihood that he would have prevailed, he also must prove that, had such a motion been timely filed, the Commonwealth would not have been able to prove that the scope of the consent was constitutionally proper. *Id.* at 87, 93. The defendant's challenge fails in both respects. Even at this juncture, he has not asserted by affidavit or otherwise that he had a reasonable expectation of privacy in the bedroom area, the bureau, or the strong box.[11] Nor has he asserted that his mother lacked the authority to consent to a search of those locations. Even had he done so, on the facts found by the judge, the defendant has not demonstrated that the Commonwealth would not have been able to prove that the initial entry was lawful and that the defendant's mother had the authority to consent.

(i) *The initial entry.* The facts found by the judge establish that Girard's initial entry was lawful and, conversely, that the defendant would not have been able to prove otherwise. As the judge found, Girard did not enter the house to conduct any criminal investigation. Rather, he entered to carry out his duties as a fire fighter, at the direction of Lieutenant Grimley of the Townsend fire department, to respond to a potential fire emergency that threatened the Farnsworth home. See *Commonwealth* v. *Ringgard*, 71 Mass. App. Ct. 197, 200-201 (2008); *Commonwealth* v. *McCarthy*, 71 Mass. App. Ct. 591, 593-594 (2008). Girard did

---

area. It did not challenge Girard's initial entry of the house, nor did it claim that the search of the defendant's bureau and a strong box exceeded the scope of his mother's consent. It is not entirely clear from the defendant's brief that his ineffective assistance claim extends to the bureau and strong box, but we assume that it does.

[11]The defendant failed to submit his own affidavit either in support of the motion to suppress or in support of his motion for new trial, and thus, he did not assert an expectation of privacy in the bedroom area, the bureau, or the strong box.

not touch any of the evidence of criminality that he saw in plain view, but merely made "mental notes" of what he had seen in the course of his search for the source of the suspected fire. The fact that he was able to recognize marijuana and a marijuana growing operation because of his training and experience as a police officer did not require him to turn a blind eye to those facts because he was not then functioning in a law enforcement capacity. See *Commonwealth* v. *Jung*, 420 Mass. 675, 681-683 (1995) (no need to suppress evidence seen by fire fighter while searching a house to determine the cause and origin of a fire).

(ii) *The bureau and strong box.* Similarly unavailing is the defendant's claim that counsel should have mounted a challenge to the search of the bureau and the strong box in his bedroom area.[12] The only affidavit submitted in support of the motion to suppress, that of Mrs. Farnsworth, made no mention of the question of her authority to consent to a search of the bureau or the strong box. See *Commonwealth* v. *Clegg*, 61 Mass. App. Ct. 197, 203 (2004).

Consequently, we are left with an incomplete record that most likely would have been developed differently if this issue had been raised in the first instance. For this reason alone, the defendant has not proven that the Commonwealth would not have been able to establish that the search of the bureau and strong box was constitutional. See *Commonwealth* v. *Comita*, 441 Mass. at 87, 93. Moreover, on the state of the record developed at the suppression hearing and at trial, it is clear that Mrs. Farnsworth had either actual or apparent authority to consent to search of the bureau and the strong box.[13] When Girard saw the bureau in question, there was a baggie of marijuana sticking out

---

[12]Because the defendant failed to raise, in a motion to suppress, the issues he now frames on appeal as ineffective assistance, the Commonwealth was under no obligation to provide evidence that supported Mrs. Farnsworth's authority to consent to the search of the bureau and the strong box. Indeed, the transcript of the motion hearing is completely silent as to these items. At the hearing on the defendant's motion for new trial, the prosecutor brought this to the judge's attention, and noted the unfairness of a post hoc assessment of the scope of the consent without the Commonwealth being given the opportunity to create a proper record.

[13]Although in reviewing the judge's ruling on a motion to suppress, we cannot rely on the facts developed at trial, see *Commonwealth* v. *Deramo*, 436 Mass. 40, 43 (2002), those facts nonetheless shed some light on the avail-

of the top drawer, and the strong box was unlocked.[14] Based on this available evidence, the defendant made no real effort to exercise any greater control over his bureau and the strong box than he did over the rest of his bedroom area (where drugs and contraband were also in plain view) that made his rights to those items exclusive to those who had similar access and authority over the area, such as his mother. See *United States* v. *Matlock*, 415 U.S. 164, 171 n.7 (1974) (one assumes the risk that an occupant who has mutual use or joint access to property will consent to a search of that area).

Similarly, the evidence demonstrated that the defendant's mother, who was the owner of the house, had full access rights to the top floor and unrestricted access to the bureau or the unlocked strong box, with the attached key. In short, all the evidence points to the conclusion that the defendant's mother had the authority to consent to the search of her house and all its locations. See *United States* v. *DiPrima*, 472 F.2d 550, 551 (1st Cir. 1973) (mother gave valid consent for police to search room in an apartment she rented); *United States* v. *Wright*, 564 F.2d 785, 790 (8th Cir. 1977) (defendant's mother who owned the house could properly consent to the search of the entire premises, including son's bureau); *Commonwealth* v. *Ortiz*, 422 Mass. 64, 70 (1996) (consent by defendant's father to search bedroom in father's home valid even if defendant had possessory interest in the room). See also 4 LaFave, Search and Seizure § 8.4(b), at 198 (4th ed. 2004) ("overwhelming majority" of courts take the view that a parent may properly consent to the search of a child's room).

Moreover, when she accompanied Girard during the search, the defendant's mother expressly told him that the defendant had never limited her access to his bedroom area. It was reasonable for Girard to believe that Mrs. Farnsworth's authority to consent thus extended to the bureau and the strong box found in the bedroom area. She knew Girard was searching for drugs

ability of evidence, and the likely outcome of the motion had it been properly filed. See *Commonwealth* v. *Comita, supra* at 94.

[14]The judge, who was the fact finder at trial, concluded that the box was unlocked. This conclusion was supported by the evidence at trial, which showed that the box had the key in it, and the box itself became an exhibit at trial for the fact finder to examine.

when she provided her consent, she was present when the search was conducted, and she expressed no limitation in regard to these items. By no objective measure did Mrs. Farnsworth restrict the scope of her consent to search. See *Commonwealth* v. *Hinds*, 437 Mass. at 59; *Commonwealth* v. *Dejarnette*, 75 Mass. App. Ct. 88, 96 (2009) (where police knew that mother had a child who lived with her at her apartment, it was reasonable for officers to believe the mother's general consent to search for drugs permitted a search of a Doctor Seuss backpack).

Given that Mrs. Farnsworth had either actual or apparent authority to consent to search of the bureau and the strong box, the defendant cannot establish that the Commonwealth could not constitutionally justify the search that was conducted. See *Commonwealth* v. *Comita, supra* at 87, 93. The defendant was not deprived of the effective assistance of counsel.

d. *Remaining issues.* The defendant claims that there was insufficient evidence to prove that he constructively possessed the drugs found in the top-floor loft area. He also claims that Girard's testimony that Mrs. Farnsworth told him that the loft area was the defendant's bedroom violated his confrontation rights.

As a starting point, we note that the constitutional sufficiency of the evidence under *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979), is to be measured upon that which was admitted in evidence without regard to the propriety of the admission. See *United States* v. *Quinn*, 901 F.2d 522, 529-531 (6th Cir. 1990). This is because prejudicial evidentiary errors or those that create a substantial risk that justice miscarried may be remedied with a new trial, whereas a verdict not supported by sufficient evidence results in a judgment of acquittal. See *Lockhart* v. *Nelson*, 488 U.S. 33, 34 (1988) ("where the evidence offered by the State and admitted by the trial court — whether erroneously or not — would have been sufficient to sustain a guilty verdict, the Double Jeopardy Clause does not preclude retrial"); *Kater* v. *Commonwealth*, 421 Mass. 17, 18 (1995) ("If the evidence admitted at the trial was sufficient to send the case to the jury, but is insufficient to send the case to the jury if all improperly admitted evidence is disregarded, double jeopardy principles nevertheless do not bar a retrial"). Thus, we evaluate

the state of the evidence at the close of the Commonwealth's case without regard to the propriety of the admission of Girard's now-challenged statement.

To prove constructive possession, the Commonwealth must show "knowledge coupled with the ability and intention to exercise dominion and control." *Commonwealth* v. *Brzezinski,* 405 Mass. 401, 409 (1989), quoting from *Commonwealth* v. *Rosa,* 17 Mass. App. Ct. 495, 498 (1984). In addition, contraband may be jointly possessed; it need not be exclusive to the defendant. See *Commonwealth* v. *Dinnall,* 366 Mass. 165, 168-169 (1974). "When contraband is found in a dwelling shared by a defendant and one or more other persons, a finder of fact may properly infer that the defendant is in possession of the contraband (not necessarily exclusive possession) from evidence that the contraband was found in proximity to personal effects of the defendant in areas of the dwelling, such as a bedroom or closet, to which other evidence indicates the defendant has a particular relationship." *Commonwealth* v. *Rarick,* 23 Mass. App. Ct. 912, 912 (1986).

Viewing the evidence in the light most favorable to the Commonwealth, the fact finder was entitled to find the following. The defendant resided at the house with his mother and sister. In addition to the challenged statement, there was abundant evidence from which the fact finder could reasonably conclude that the loft area was the defendant's bedroom. Present in the room were the defendant's time card, writings to him, men's clothing, men's boots, and items consistent with the defendant's age, such as video game controllers. It was also permissible for the fact finder to infer that the bedding in the loft area was masculine, and the room's decor, which included posters with drug symbols and scantily-clad women, was most likely the selection of a teen-aged male.

In contrast, the other two bedrooms in the house had female clothing in them. One such room was the master bedroom, most likely used by the defendant's mother, and the other downstairs bedroom had a canopy bed, most likely used by the defendant's sister. All of these facts taken together provided more than sufficient evidence to establish the defendant's knowledge, ability, and intention to exercise dominion and control over the area

where the drugs were found. See *Commonwealth* v. *Rarick, supra* at 913. See also *Commonwealth* v. *Clarke*, 44 Mass. App. Ct. 502, 504-506 (1998) (defendant had constructive possession of drugs found in bedroom in which his clothes and various forms of identification were present). The fact that the defendant was not present when the drugs were found does not diminish the reasonableness of that conclusion.

The final issue to be resolved is whether Girard's now-challenged statement created a substantial risk of a miscarriage of justice. During the defendant's cross-examination of Girard, Girard testified that he told Mrs. Farnsworth that she could be charged with an offense. Defense counsel then said: "And she never was?" To this, Girard gave the nonresponsive reply: "She stated it's her son's room." Counsel neither objected to this statement nor moved to strike it. Instead, he refocused Girard away from what Mrs. Farnsworth had said, to whether Girard told her she could be charged with an offense. The defendant now claims that the statement violated his confrontation rights pursuant to *Crawford* v. *Washington*, 541 U.S. 36 (2004). Assuming that the statement was improperly admitted in evidence, we nonetheless determine that, in light of the other abundant evidence that established the defendant's dominion and control over the bedroom area, there was no risk that justice miscarried. See *Commonwealth* v. *Whitney*, 63 Mass. App. Ct. 351, 360-361 (2005); *Commonwealth* v. *Caparella*, 70 Mass. App. Ct. 506, 516-517 (2007). Also, because there is no substantial risk of a miscarriage of justice, counsel was not ineffective for failing to object and moving to strike the statement. *Commonwealth* v. *Curtis*, 417 Mass. 619, 624 n.4 (1994). *Commonwealth* v. *Keon K.*, 70 Mass. App. Ct. 568, 574 n.4 (2007).

*Judgments affirmed.*

*Order denying motion for new trial affirmed.*