Billings, Thomas P., J.
The defendant, charged with firearms offenses and one count of assault and battery, has moved to suppress the fruits of a warrantless search of his residence. The Commonwealth defends the search on the ground of consent. For the reasons that follow, the defendant’s motion is DENIED.
FINDINGS OF FACT
Based on the credible inferences and the reasonable inferences therefrom, and assigning the burden of proof to the Commonwealth,[1] I find the following facts.
1. On June 14, 2009 Detective James Peloquin and Sgt. Luppold, both of the Westford Police, responded to 8 Pollyanna Lane, Westford, on a report of a domestic assault and battery and of illegal firearms possession. The suspect was the defendant; the complainant, his girlfriend. The defendant was not present when Peloquin and Luppold arrived, having been arrested by other officers for the assault and battery and transported to the station.
2. The defendant’s parents were present at the home, however, and the officers spoke with them in the living room. They told the parents that they had been informed that the defendant kept three firearms in his room in the basement of the home,[2] and that they had ascertained that he was not licensed.
3. The parents told the police that the defendant, age 26, lived in the home and had done so all his life. He did not, the parents said, pay them rent. The basement area in which he lived was unlocked. The defendant’s living quarters could be found on the left as one descended the cellar stairs, while the area on the right was used for storage. The defendant’s area consisted of a bedroom with abed, couch and TV, with a connected office and walk-in closet, both accessible only through the bedroom. The parents were able to describe the office. They did not describe the circumstances of their having been there, except that Mr. Dooley mentioned that he’d been to the defendant’s area at some point to replace a ceiling damaged by a leaking toilet upstairs.
4. The parents said they were willing to allow the police to search the basement living quarters, and that they did not want firearms in the home. One asked whether their son would be in trouble; Peloquin replied, “It depends on what we find.” Undeterred, Mr. Dooley signed, and Mrs. Dooley witnessed, a consent to search form (Hearing Ex. 1) tendered by the officers. This authorized Peloquin and Luppold to search, without a warrant, “RESIDENCE 8 POLLYANNA.”[3]
5. Peloquin and Luppold descended the cellar stairs and searched the defendant’s living area. Mr. Dooley came down when the officers had discovered a safe and wanted to know the combination, and one other time while they were still searching. Neither he nor Mrs. Dooley requested at any time that the search terminate.
6.Behind a desk in the office, the police found an opaque black garbage bag. Inside it was a Norinco MAK-90 Sporter semi-automatic rifle, which is the subject of Indictment No. 1.
CONCLUSIONS OF LAW
The warrantless search of the basement rooms was justified, if at all, as a consent search. As a general rule, “the consent of one who possesses common authority over premises or effects is valid against the absent, nonconsenting person with whom that authority is shared.” United States v. Matlock, 415 U.S. 164, 170 (1974) (defendant’s domestic partner validly consented to search of bedroom and closet that they shared).
As with any warrantless search, the Commonwealth has the burden of proving an exception to the warrant requirement; here, “that the entry was reasonable because it had the consent of a person with actual or apparent authority over the room[s].” Commonwealth v. Porter P., 456 Mass. 254, 262 (2010). Actual authority derives from a person’s “common authority over the home.” Id. There is apparent authority when a search “is based on the consent of a third party who the police, at the time of entiy, reasonably, but mistakenly, believed had common authority over the premises.” Id. at 267.
The only published Massachusetts precedents applying these principles to the relationship of parent and adult child are Commonwealth v. Ortiz, 422 Mass. 64 (1996), and Commonwealth v. Farnsworth, 76 Mass.App.Ct. 87, F.A.R. denied, 456 Mass. 1102 (2010). In Ortiz, the defendant kept some belongings in his parents’ home, in a room occupied by his former girlfriend but not by the defendant. His father consented to a search of the room. Without much discussion but with citations to two prior cases,[4] the court held that “the father’s consent was sufficient to make the warrantless search valid.”
In Farnsworth, the nineteen-year-old defendant’s mother told the police “that although the defendant slept in the top-floor area, the entire family stored items in the attic area beyond the defendant’s room [and] that the defendant allowed her access to his room and never excluded her from the area, arid that she had access to the entire home.” The officers’ observations confirmed this: in the attic area accessible only through the defendant’s bedroom were stored Christmas decorations, household goods, and other items. The Appeals Court upheld findings by the motion judge that the mother’s consent was voluntary, and extended to the son’s bedroom. In reviewing an ineffective assistance claim — the mother’s authority to consent not having been litigated in the trial court— the court noted that
*408 the evidence demonstrated that the defendant’s mother, who was the owner of the house, had full access rights to the top floor and unrestricted access to the bureau or the unlocked strong box, with the attached key [which the police also searched). In short, all the evidence points to the conclusion that the defendant’s mother had the authority to consent to the search of her house and all its locations.
76 Mass.App.Ct. at 97.
The Ortiz and Farnsworth holdings were predictable because in both cases, the defendant use of and/or access to the room in question was non-exclusive.[5] Neither, however, directly answers the question posed by this case: where the police know that the place to be searched is the unlocked bedroom of an adult child living with his parents, but know nothing about whether and in what circumstances the parents or others have enjoyed access to the room, may they rely on a parent’s consent to search?
Cases from other jurisdictions have not spoken with one voice on this question. See 4 W. LaFave, Search and Seizure, §8.4(b) (4th Ed. 2004), and cases cited. At least one federal court of appeals has held that the parental relationship and the lack of a lock do not, by themselves, confer actual or apparent authority on the parent to consent to search the room(s) of an adult child living in his parents’ home. Said the court:
As a factual matter, the agents could not reasonably have believed [the defendant’s mother] had authority to consent to this search. The agents simply did not have enough information to make that judgment.
****
When a minor child’s room is involved, agents might reasonably assume that the child’s mother, in the performance of her parental duties, would not only be able to enter her child’s bedroom but also would regularly do so. But we are aware of no basis for such an assumption when the child is, as here, 29 years old. The agents in this case had no way of knowing whether parents usually do not permit their adult sons and daughters to have exclusive use of the rooms they occupy and they made no effort to find out whether Mrs. Whitfield had this or some other arrangement with her son.
United States v. Whitfield, 939 F.2d 1071, 1074, 1075 (D.C.Cir. 1991). Under this approach, suppression would be required on the facts of this case.
A different federal circuit court, however, has held that the parent-child relationship creates a rebuttable presumption that the parent has authority to search the home, including the child’s room. United States, v. Rith, 164 F.3d 1323 (10th Cir. 1999).[6] Authority to search, the court held, may stem from “either (1) mutual use of the property by virtue of joint access, or (2) control for most purposes over it.” Id. at 1329.
[C]ontrol for most purposes of property is a normative inquiiy dependent upon whether the relationship between the defendant and the third party is the type which creates a presumption of control for most purposes over the property by the third party. If a relationship creates such a presumption of control and is unrebutted, the third party has authority to consent to a search of the property.
Relationships which give rise to a presumption of control of property include parent-child relationships . . . [T]hat presumption of control may be rebutted by facts showing an agreement or understanding between the defendant and the third party that the latter must have permission to enter the defendant’s room. For example, evidence that the defendant paid rent to the third party would tend to show a landlord-tenant relationship. Other examples include a lock on the bedroom door or an agreement, explicit or implicit, that the third party never enter a particular area.
Id. at 1330-31 (footnotes and citations omitted).
I believe the Rith court’s analysis to be the more sound. “The constant element in assessing Fourth Amendment reasonableness in the consent cases ... is the great significance given to widely shared social expectations, which are naturally enough influenced by the law of property, but not controlled by its rules.” Georgia v. Randolph, 547 U.S. 103, 111 (2006). By common societal understanding, children as they grow older require, and tolerate, less parental supervision. Parents still, however, maintain authority as householders over what goes on in their home; hence, the oft-heard gripe, ‘When you’re under our roof, you’ll live by our rules.” It is the authority and control over the home, not necessarily over the child, that carries with it the presumptive authority to consent to a search of the house, including the child’s room. As a matter of Fourth Amendment law, I accept at least this aspect of the Rith holding,[7] and rule that in the absence of contrary evidence in this case, the defendants’ parents had authority to consent to the search.
They had authority for Article Fourteen purposes as well. In the Porter P. case, supra, the SJC spoke in terms of a general understanding that “mature family members . . . have the run of the house,” which confers on them the presumptive authority to consent to a search.
We understand that the police need clear guidance as to who has common authority over a residence and therefore who is entitled to give actual consent, because, as here, they rely on such consent in deciding to conduct a warrantless search, as opposed to securing the residence and applying for a search warrant. Therefore, we declare under art. 14 that a person may have actual authority to consent to a warrantless search of a home by the police only if (1) the person is a coinhabitant with a shared right of access to the home, that is, the person lives in the home, either as a member of the family, a roommate, *409 or a houseguest whose stay is of substantial duration and who is given full access to the home; or (2) the person, generally a landlord, shows the police a written contract entitling that person to allow the police to enter the home to search for and seize contraband or evidence. No such entitlement may reasonably be presumed by custom or oral agreement.
Coinhabitancy need not be defined by any legal relationship, such as that of spouses or cotenants on a lease. Rather, it should be defined by the person’s demonstrated intent to make a residence his or her home for some substantial period of time. Therefore, an overnight houseguest would lack the authority to consent, unless his or her stay is substantial in its duration, and he or she is given “the run of the house.” See United States v. Clutter, 914 F.2d 775, 777 (6th Cir. 1990), cert. denied, 499 U.S. 947 (1991) (“As a general consideration, there is every reason to suppose that mature family members possess the authority to admit police to look about the family residence, since in common experience family members have the run of the house”).
456 Mass, at 265-76 (footnotes and most citations omitted; emphasis supplied).
In this case, the defendant’s parents were “mature family members” living in the house, which they evidently owned. They had presumptive authority to consent to a search of any part of it, including that occupied by the defendant. The presumption was not overcome by evidence of a contrary agreement, an objection by the defendant, a lock on the door, or any other indication that the parties understood that the parents’ authority over the home stopped at the curtain separating the defendants’ quarters from the rest.[8] The search was therefore valid, both under the Fourth Amendment to the United States Constitution and under Article Fourteen.
ORDER
For the foregoing reasons, the defendant’s Motion to Suppress is DENIED.

 The Commonwealth has the burden or proving, by a preponderance of the evidence, that the police had a valid consent to search. United States v. Matlock, 415 U.S. 164, 177 (1974); Commonwealth v. Berry, 420 Mass. 95, 104 (1995).

 This information evidently came from the officers who had interviewed the defendant’s girlfriend.

 The form informed the parents that constitutional right to refuse to allow a search without a warrant. The officers told them that they did not have to sign, and that they could stop a search at any time. The whole interchange was conducted in a relaxed, non-confrontational manner, without resort to threats or promises. The defendant does not appear to assert that his parents’ consent was obtained involuntarily, and I find that it was in fact voluntarily given.

 The cited cases are Commonwealth v. Wahlstrom, 375 Mass. 115, 117 (1978), and Commonwealth v. Martin, 358 Mass. 282, 287-288 (1970). In Wahlstrom, a store clerk’s consent to a search of the store of which he was then in sole charge was held valid, since the owner/defendant had “put the premises under the control of his employee, and the defendant’s employee had a sufficient appearance of authority to give valid consent to the search.” In Martin, the defendant’s wife validly consented to a search of the marital home.

 This is true also of most of the widely cited federal precedents, including the two (Wright and DiPrimd) cited by the Farnsworth court. In United States v. Wright, 564 F.2d 785 (8th Cir. 1977), “all residents had equal access to and use of all rooms in the house and all articles of furniture therein.” In United States v. DiPrima, 472 F.2d 550 (1st Cir. 1973), there was evidence that the defendant’s mother, who consented to the search, regularly traveled through the defendant’s room to a closet that she used. See also United States v. Block, 590 F.2d 535 (4th Cir. 1978) (consenting mother regularly entered her son’s room to clean it and for “other household purposes”); United States v. Peterson, 524 F.2d 167 (4th Cir. 1975), cert. denied, 424 U.S. 925 (1976) (defendant shared room with two brothers); United States v. Mix, 446 F.2d 615 (5th Cir. 1971) (mother stored items others in defendant’s room and had free access to it).

 A number of decisions from the state courts have gone further, holding that the parent-child relationship conclusively empowers the parent to consent to a search of the child’s room, no matter the age of the child, and whether or not the child has been consulted and has refused consent. See 4 W. LaFave, Search and Seizure, §8.4(b) at 200-01 (4th Ed. 2004), and cases cited at nn.60-63. A particularly cogent exposition of this view may be found in Vandenburg v. Superior Court, 8 Cal.App.3d 1048, 87 Cal.Rptr. 876 (1970), which upheld the search of the nineteen-year-old defendant’s room on the basis of his father’s consent. Said the court, “[plermitt-ing an officer to search a bedroom in order to determine if his son is using or trafficking in narcotics appears to us to be a reasonable and necessary extension of a father’s authority and control over his children’s moral training, health and personal hygiene.” 8 Cal.App.3d at 1053. The defendant in this case was in his twenties, not his teens, and the contraband sought was guns, not drugs. Nonetheless, a householder’s interest in keeping his family and his home free of illegal firearms seems hardly less compelling than the father’s interest in the Vandenburg case.

 Another aspect may now be in doubt, for in Rith the adult child was present for the search and objected to it. See Georgia v. Randolph, cited in the text, in which the Supreme Court held that “a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident.” 547 U.S. at 120. In Randolph, the objecting party was the estranged husband of the wife who gave consent. Whether the parent-child relationship would warrant a different outcome remains to be seen, but it may be that the child’s objection would overcome the presumption of parental authority. No such circumstances, however, are present in this case.

 The defendant’s secreting of the Norinco rifle in a garbage bag may have shielded it from casual eyes, but it hardly evidenced an understanding that his parents lacked authority to handle the bag or inspect its contents, whose general nature must have been apparent to anyone picking it up. Cf. Farnsworth, 76 Mass.App.Ct. at 96-97 (where strong box in defendant’s room was unlocked and a baggie containing marijuana protruded from the top drawer of his bureau, “the defendant made no real effort to exercise any greater control over his bureau and the strong box than he did over the rest of his bedroom area . . . that made his rights to those items exclusive to those who had similar access and authority over the area, such as his mother”).