COMMONWEALTH *vs.* DANIEL NOVA.

No. 99-P-402.

Suffolk. May 9, 2000. - December 29, 2000.

Present: BROWN, PERRETTA, & GREENBERG, JJ.

*Search and Seizure,* Warrant, Protective sweep. *Constitutional Law,* Search
    and seizure. *Evidence,* Consciousness of guilt, Flight.

In the circumstances of police officers' execution of a bench warrant for the
    defendant's arrest at the defendant's apartment, no specific and articulable
    facts supported any inference that the safety of the officers or destruction
    of evidence was threatened; consequently, a protective sweep was improper,
    and evidence seized as a result of observations made during the sweep
    should have been suppressed. [634-636]

INDICTMENT found and returned in the Superior Court Depart-
ment on November 20, 1996.

A pretrial motion to suppress evidence was heard by *Vieri
Volterra,* J., and the case was tried before *James D. McDaniel,
Jr.,* J.

*Raymond E. Gillespie* for the defendant.

*Benjamin L. Apt,* Assistant District Attorney, for the
Commonwealth.

BROWN, J. The defendant was convicted by a Superior Court
jury of trafficking in cocaine in an amount in excess of twenty-
eight grams but less than one hundred grams, G. L. c. 94C,
§ 32E(*b*)(2). On appeal, the defendant alleges that (1) his
pretrial motion to suppress was improperly denied and (2) the
trial judge erred in failing to charge the jury, sua sponte, on the
issue of consciousness of guilt. We agree that the motion to
suppress was improperly denied, and reverse the defendant's
conviction.

1. *Facts.* At the start of a trial in an unrelated matter, the
defendant fled court. The trial judge immediately issued a bench
warrant for the defendant's arrest pursuant to G. L. c. 276,

§ 20F. Acting under the authority of the warrant, police went to the defendant's home for the purpose of taking the defendant into custody and returning him to court.

Once at the residence — a multifamily home — officers stationed themselves at the main front and rear entrances of the defendant's second-floor apartment. Officers at the front door then announced their presence and purpose. There was no answer.

Officers went downstairs and spoke to one of the defendant's neighbors. During the course of that conversation, the officers heard someone ascend the stairs toward the defendant's apartment. The police again took up positions outside the front and rear of the defendant's apartment and knocked. The defendant (one of the officers recognized his voice) asked who was there. The police identified themselves and stated their purpose.

Immediately thereafter, the police officers heard the sound of running footsteps inside. The officers broke down the door to the apartment, a short chase ensued, and the defendant was finally caught as he attempted to flee out the rear of the building. The defendant was pat-frisked, handcuffed, and returned to court.

About five minutes later, officers went back to the defendant's apartment for the purpose of securing it — as noted, the door had been broken during the initial entry by police. Before stationing a guard outside to wait for the landlord to repair the lock, etc., police officers walked through the apartment, glancing into each room and announcing "police."

During this walk-through, officers saw a gram scale with a white residue in the pan. Nearby was a bottle of inositol, a powder often mixed with cocaine to increase its bulk and hence its resale value. The officers did not touch these items. After ensuring that no one was inside the apartment, a guard was stationed outside the door. The police obtained a search warrant and ultimately discovered two bags of cocaine and some packaging materials.

Other relevant details are included in our analysis as necessary.

2. *Lawfulness of initial sweep search.* There is no question that the police initially entered the defendant's apartment lawfully. An arrest warrant encompasses the power to enter a

residence for the purpose of executing the warrant. It is the officers' subsequent reentry, during which the scale and inositol were observed — what the motion judge styled a "protective sweep" — that the defendant challenges. We agree that in the circumstances presented here the police exceeded their authority during this second entry.

In *Maryland* v. *Buie*, 494 U.S. 325, 332-336 (1990), the United States Supreme Court set out the limits of a protective sweep of the sort carried out by the police here. Specifically, the Court concluded that in order to conduct even a cursory search of areas beyond the immediate arrest site (the so-called "lunge area," which defines the limits of a search incident to arrest, see G. L. c. 276, § 1), there must be "articulable facts" that "would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 334.

Here, police knocked on the defendant's door and received no reply. A few minutes later they heard a person climb the steps toward the defendant's apartment. When the police knocked again, the defendant answered. This sequence of events strongly suggests that the defendant was alone in the apartment. Such an inference is bolstered by the fact that police saw no other person as they ran through the apartment, and no one tried to intercede on the defendant's behalf from within the apartment at any time during the defendant's arrest.

In these circumstances, there were no "articulable facts" to support an inference that anyone was in the apartment at the time of the sweep — let alone anyone who posed a danger to the police.[1] Even were someone hiding inside, once the defendant had been arrested and the police began to depart, he or she would have had no obvious motivation for assaulting the police. See *Commonwealth* v. *Dubois*, 44 Mass. App. Ct. 294, 296 (1998) (protective sweep improper after arrest, even if premises occupied, where no basis for believing occupants might harm police). In short, any perception of a threat to officers was simply too speculative here to meet constitutional requirements.

---

[1] We note in passing that nothing appears in the record that might tend to indicate that there were persons about the premises or in the street who could have given the officers reason to believe someone had entered the apartment during the short, five-minute interval between the time of the arrest and their reentry into the apartment.

Likewise, there were no obvious concerns here for the loss or destruction of evidence (one of the bases relied on by the Commonwealth to validate the police action). As noted, the defendant was arrested on the basis of a bench warrant after he fled his trial.[2] Such an offense produces no palpable evidence that might be expunged by a confederate hiding in the defendant's apartment.

We conclude that, to the extent that the warrant here ultimately was obtained on the basis of observations made during the improper sweep search, all evidence obtained pursuant to that warrant must be suppressed. The Commonwealth, at any retrial, is free to make its case on any independently obtained evidence not presented at the first trial. While it is doubtful that any such evidence exists, the Commonwealth retains the right to proceed against the defendant based on lawfully obtained proof, if available.

3. *Consciousness of guilt.* The prosecutor's several suggestions in the course of the trial that the defendant's flight from police indicated consciousness of guilt with respect to the drug offenses at issue were not improper.[3] As to the defendant's claim on appeal that the trial judge erred in failing to give an instruction on consciousness of guilt, sua sponte, see *Commonwealth* v. *Simmons,* 419 Mass. 426, 436 (1995) ("[T]he better practice is not to require that a judge, on his or her initiative, instruct on [consciousness of guilt]").

The judgment is reversed. The order denying the motion to suppress is reversed. A new order shall enter suppressing all evidence found during both the initial "protective sweep" and the subsequent search conducted pursuant to the warrant.

*So ordered.*

---

[2]Under G. L. c. 276, § 1, second par. (as appearing in St. 1974, c. 508), "[a] search conducted incident to an arrest may be made only for the purposes of seizing fruits, instrumentalities, contraband and other evidence of the crime for which the arrest has been made, in order to prevent its destruction or concealment; and removing any weapons that the arrestee might use to resist arrest or effect his escape. Property seized as a result of a search in violation of the provisions of this paragraph shall not be admissible in criminal proceedings."

[3]We comment on this claim in the event of a retrial.