## COMMONWEALTH vs. ALAN McCOLLUM.

No. 07-P-1881.

Suffolk. October 6, 2010. - April 14, 2011.

Present: CYPHER, GRASSO, & MILLS, JJ.

*Firearms. Unlawful Possession of a Firearm While in the Commission of a Felony. Controlled Substances. Practice, Criminal,* Required finding, Confrontation of witnesses, Motion to suppress, Warrant, Affidavit, Admissions and confessions, Cross-examination by prosecutor, Argument by prosecutor. *Evidence,* Ballistician's certificate, Certificate of drug analysis, Admissions and confessions, Prior misconduct, Cross-examination. *Constitutional Law,* Confrontation of witnesses, Admissions and confessions. *Search and Seizure,* Protective sweep, Warrant, Affidavit, Exigent circumstances. *Error, Harmless.*

At the trial of indictments charging, inter alia, possession of ammunition without a firearm identification (FID) card and unlicensed possession of a firearm, the evidence was sufficient to sustain the defendant's convictions, where the testimony of police officers established that the defendant knew the firearm and ammunition were present in a hallway closet in the apartment where he was arrested, and by knowing their location, had the ability to exercise control over them; where, as to the ammunition, there was evidence (including the certificate of ballistics analysis that was admitted in error) that it was designed for use in any firearm; and where the defendant did not come forward with any evidence to show that he had a valid FID card [245-247]; further, as to the firearm, the Commonwealth presented sufficient evidence that the .44 caliber weapon met the statutory definition, and that the apartment was not the defendant's residence or place of business [247-248].

At the trial of an indictment charging possession of cocaine, there was insufficient evidence to show that the defendant had the ability and intention to exercise dominion and control over the areas where cocaine was uncovered during a search of the apartment where he was arrested. [248]

At the trial of indictments charging, inter alia, unlicensed possession of a firearm and possession of ammunition without a firearm identification (FID) card, the erroneous admission in evidence of a certificate of ballistics analysis for the purpose of showing that a firearm met the statutory definition, without testimony by the analyst or the opportunity for the defendant to cross-examine the analyst, in violation of the defendant's right under the Sixth Amendment to the United States Constitution to confront the witnesses against him, required reversal, where it could not be said that the Commonwealth presented enough evidence to nullify the effect of the

certificate [248-249]; on the other hand, the erroneous admission in evidence of such a certificate, for the purpose of showing that six bullets met the applicable statutory definition of ammunition, was harmless beyond a reasonable doubt, where the statutory definition of ammunition permitted experienced police officers, trained in the use of firearms and ammunition, to identify ammunition as such without scientific examination or testing [249-250].

A Superior Court judge properly denied a criminal defendant's pretrial motion to suppress evidence discovered in plain view during a protective sweep of an apartment and evidence discovered during a subsequent search by warrant of the apartment, where a third party's entry into the apartment during a violent flight from police officers in pursuit of him provided specific and articulable facts justifying the protective sweep [250-251]; and where a police detective's affidavit accompanying the application for the warrant presented sufficient specific information tying the site of the search to the criminal activity suspected [251-252].

At a criminal trial, there was no error in the admission of evidence discovered by police during the entry of an apartment, without consent or a search warrant, in pursuit of a third party known to have outstanding arrest warrants, where exigent circumstances justified the entry. [252-255]

Questions asked of a criminal defendant by police following a protective sweep of the apartment in which he was found, that were specifically directed to the presence and location of a weapon, did not require Miranda warnings, where the protective sweep had uncovered objectively reasonable evidence, i.e., the presence of an empty holster, indicating that a firearm, potentially posing a threat to the officers and the public, was nearby. [255]

At a criminal trial, there was no error in the prosecutor's asking the defendant about his failure to have included, in his earlier affidavit accompanying his motion to suppress, threats made by a police officer. [255-256]

At a criminal trial, the prosecutor's threat to move for a mistrial, and the judge's suggestion that she would favorably entertain such a motion, did not constitute coercion and did not burden the defendant's exercise of his right not to testify, where neither the judge nor the prosecutor threatened additional punishment or other inappropriate treatment. [256-257]

At a criminal trial, there was no error in the exclusion of certain testimony during the defendant's direct examination, where the judge did not arbitrarily determine that the defendant had failed to establish a hearsay exception or that the evidence was insufficiently reliable and trustworthy. [257-258]

This court concluded that a criminal defendant's conviction of possession of ammunition without a firearm identification card did not violate his right to possess firearms in his home under the Second Amendment to the United States Constitution, as incorporated into the Fourteenth Amendment, where the Commonwealth established at trial that the apartment in which the defendant was charged with constructively possessing ammunition was not his home, and where the defendant's criminal history precluded his compliance with the Commonwealth's valid licensing requirements. [258]

At a criminal trial, there was no palpable error in the admission of evidence of the defendant's unspecified prior criminal acts, where the evidence was cumulative of already properly admitted criminal history evidence. [258-259]

At a criminal trial, there was no error in the admission of evidence about police procedures in applying for search warrants and conducting protective sweeps, where the evidence was relevant to show that the police had followed proper procedure, as well as to demonstrate the context and continuity of officers' actions during the investigation of the defendant. [259-260]

At a criminal trial, no substantial risk of a miscarriage of justice arose from the brief and isolated questioning of the defendant by the prosecutor asking whether other witnesses were lying when they made certain statements. [260]

At a criminal trial, there was no error in a prosecutor's statements in closing argument regarding claims for which there was no direct evidence, where her argument was based only the evidence and the reasonable inferences drawn therefrom. [260-261]

INDICTMENTS found and returned in the Superior Court Department on November 17, 2003.

A pretrial motion to suppress evidence was heard by *Kenneth J. Fishman*, J.; the cases were tried before *Margaret R. Hinkle*, J., and a motion for a new trial, filed August 7, 2008, was heard by her.

*Estera Halpern* for the defendant.

*Elisabeth Kosterlitz*, Assistant District Attorney, for the Commonwealth.

MILLS, J. The defendant, Alan McCollum, appeals his convictions of drug and firearm offenses, arguing (1) insufficient evidence; (2) that *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 (2009), requires reversal of all of his convictions; (3) that his motion to suppress was improperly denied; (4) a Miranda violation and other Fourth Amendment violations were not presented to the motion judge; (5) a variety of other constitutional claims, including admission of his post-Miranda silence as evidence, violation of his right not to testify, violation of his right to present a defense, and that the Second Amendment renders the firearm and ammunition possession statutes under which he was convicted unconstitutional; (6) a variety of evidentiary issues, including admission of unfairly prejudicial evidence and prosecutorial misconduct; and (7) improper denial of his new trial motion. We affirm in part and reverse in part.

1. *Background.* We recount the evidence as it developed at trial. On September 4, 2003, several Boston police officers were

surveilling a stolen car located in the Roxbury section of Boston. Two officers saw Steven Williams getting into that car. The officers recognized Williams and were aware that he had a criminal record that included firearm and drug offenses. In addition, the officers knew that Williams had outstanding warrants in California and in the Commonwealth. The officers tried to stop Williams by blocking both ends of the street with police vehicles. Williams struck one of the police vehicles with the stolen car and escaped on foot. One officer saw Williams tossing objects, which were later identified as plastic bags containing "crack" cocaine, into a field. Officers observed Williams run into an apartment building at 80 Walnut Avenue in Roxbury.

The officers obtained back up, waited for a representative of the building's management to arrive, and began searching the building. After searching several apartments with the occupants' consent, they went to apartment number 12 (apartment 12).[1] The officers knocked and announced their presence, but no one responded. A representative of the building's management then opened the door to apartment 12 with his key.

In a bedroom inside, the officers found Williams lying on a bed appearing to the officers to be feigning sleep, and the defendant sitting on the edge of the bed with a young girl. The officers later learned from the defendant that the girl was his daughter and the apartment was leased to the girl's mother, Andrea Lynch, who was not present. The officers arrested Williams.

The police conducted a protective sweep of the apartment and found an empty holster in a hallway closet. An officer asked the defendant whether there was a gun in the apartment. When the defendant answered yes, another officer read the defendant his Miranda warnings. The defendant then revealed the location of a .44 caliber firearm in a grocery bag in the same hallway closet where the holster was found. The bag also contained six .44 caliber rounds of ammunition, not loaded in the gun.

Based on this information, an officer sought a warrant to

---

[1] The evidence about how many apartments the police searched prior to apartment 12 was somewhat inconsistent. One officer testified that four apartments had been searched prior to apartment 12, while another testified that only four apartments remained to be searched when the police arrived at apartment 12.

search apartment 12. The affidavit in support of the warrant recited the above facts, as well as additional information about Williams's outstanding arrest warrants and that Williams had discarded a cellular telephone and what appeared to be three bags of crack cocaine while fleeing from police. A warrant issued. The officers then searched apartment 12. They found seven bags of crack cocaine on the floor of the bedroom closet and one bag of crack cocaine under the bed where the defendant and Williams were first observed. The officers also discovered a bag of marijuana on top of the kitchen cabinet.

The Commonwealth charged the defendant with possession of cocaine with intent to distribute, G. L. c. 94C, § 32A(*c*); possession of cocaine with intent to distribute in a school zone, G. L. c. 94C, § 32J; possession of marijuana, G. L. c. 94C, § 34; possession of a firearm without a license, G. L. c. 269, § 10(*a*); and possession of ammunition without a firearm identification (FID) card, G. L. c. 269, § 10(*h*), as amended through St. 1998, c. 180, § 69.[2] The defendant's subsequent motion to suppress, arguing both that the protective sweep was impermissible and that the search warrant affidavit was insufficient, was denied.

At trial, the defendant's counsel announced, in his opening statement, the defendant's intent to testify that he had involuntarily confessed to the location of the firearm found in the hallway closet. He further claimed that the defendant expected to show that any inculpatory admission concerning the firearm happened after police threatened that his daughter's mother would face arrest for firearm charges and that his daughter would go into Department of Social Services (DSS)[3] custody if he did not confess. The prosecutor later stated her intent to move for a mistrial if the defendant did not so testify. The defendant's counsel responded that the defendant would testify. The judge reserved ruling, noting that she would be "extremely distressed" if the defendant did not testify.

---

[2]The relevant events here took place before the 2006 amendments to G. L. c. 269, § 10, relating to unlawful possession of ammunition. See St. 2006, c. 48, §§ 6-7. See also note 5, *infra.*

[3]These events took place prior to the 2008 renaming of DSS as the Department of Children and Families (DCF).

Several police officers testified at trial to the events on the day of pursuit and arrest. Certificates of analysis from the ballistician's office of the Boston police department (ballistics certificates), relating to the firearm and ammunition, and from the State's Department of Public Health laboratory, relating to the cocaine and marijuana, were admitted. After the Commonwealth rested, the defendant moved for a required finding of not guilty on all charges. The judge postponed ruling on the motion until the end of the defendant's case-in-chief.

The defendant presented only himself as a witness. On direct examination, he attempted to testify about a conversation he had in apartment 12 with a police officer, but the prosecutor objected. After sustaining the hearsay objection, the judge conducted a voir dire of the defendant. The defendant claimed that any inculpatory admission concerning the firearm happened only after the police officer threatened to charge Lynch with possession of the firearm and force the defendant's daughter into DSS custody.

Following the voir dire, the judge noted that the defendant had not included this information in the affidavit accompanying the motion to suppress. The judge agreed to admit the testimony and stated that the prosecutor would receive "wide latitude" to cross-examine the defendant on the issue. The defendant testified as above. The prosecutor subsequently cross-examined the defendant extensively about his prior criminal history, his failure to include the police threat in his affidavit, and about Lynch's statement that he stayed at the apartment occasionally.

After the defendant rested, the prosecutor recalled one of the police officers in rebuttal to refute the defendant's testimony. The officer testified that no police officer threatened the defendant, his daughter's mother, or anyone else. The officer further testified that the police never contacted DSS regarding the defendant's daughter and that they left her in her mother's custody.

When testimony concluded, the defendant renewed his motion for a required finding of not guilty. The judge allowed the motion as to the school zone charge. She also allowed the motion as to possession of cocaine with intent to distribute while permitting the jury to consider the lesser included offense of

simple possession of cocaine, G. L. c. 94C, § 34. The jury acquitted the defendant of possession of marijuana but convicted him of the remaining three charges: possession of cocaine, unlicensed possession of a firearm, and possession of ammunition without an FID card.

The defendant subsequently moved for a new trial. He asserted that his trial counsel was ineffective for failing to challenge in the motion to suppress other aspects of the warrantless entry and search and the defendant's interrogation, and for failing to object to prejudicial evidence at trial. He also asserted that the prosecutor committed misconduct in a variety of ways, that the judge had erroneously admitted unfairly prejudicial evidence, and that the judge improperly instructed the jury. The defendant's motion was denied by the trial judge. This is a consolidated appeal of the convictions and the order denying the new trial motion.

2. *Sufficiency.* The defendant argues that the Commonwealth presented insufficient evidence to convict on any of the charges for which the jury found him guilty. We disagree with respect to the charges of possession of a firearm and possession of ammunition, but agree with respect to the charge of possession of cocaine.

Sufficient evidence exists when, viewed in the light most favorable to the Commonwealth, a rational fact finder could find all material elements of the offense established beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1978).[4] When a defendant moves for a required finding of not guilty at the close of the Commonwealth's case, the Commonwealth's evidence alone must withstand the *Latimore* standard. See *Commonwealth* v. *Berry*, 431 Mass. 326, 330 (2000).

a. *Ammunition.* To convict a defendant of unlicensed possession of ammunition, the Commonwealth must show that the defendant (1) possessed (2) ammunition designed for use in any firearm, (3) without complying with the FID card requirements as provided by the applicable statute. G. L. c. 269, § 10(*h*).[5] The Commonwealth's evidence was sufficient on all these elements.

---

[4] We use the *Latimore* standard when addressing questions of sufficiency. Elsewhere, we have recited and discuss the evidence neutrally, favoring neither party.

[5] The relevant events here took place before the 2006 amendment to G. L.

First, the Commonwealth presented sufficient evidence that the defendant constructively possessed ammunition. Where the defendant does not have actual possession of contraband, the Commonwealth may prove constructive possession. *Commonwealth* v. *Handy*, 30 Mass. App. Ct. 776, 780 (1991). Constructive possession requires that the defendant know of the presence of the contraband and have the ability and intention to exercise dominion and control over it. *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 409 (1989).

Two officers testified that the defendant stated that a weapon was in the hallway closet. One of the officers found ammunition of the same caliber as the weapon in that same closet. Applying the *Latimore* standard, this testimony establishes that the defendant knew the firearm and ammunition were present and, by knowing their location, had the ability to exercise control over them.

Second, the Commonwealth presented sufficient evidence that the ammunition was "designed for use in any firearm," *Commonwealth* v. *Mendes*, 44 Mass. App. Ct. 903, 904 (1997) (citation omitted), to send the case to the jury. A portion of that evidence, the ballistics certificate as to the ammunition, was admitted in error. See *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. at 2531-2532. Even if this error warranted reversal, see discussion *infra*, double jeopardy would not bar retrial of the defendant because the evidence, including the erroneously admitted certificates, was sufficient to send the case to the jury. See *Commonwealth* v. *DiBenedetto*, 414 Mass. 37, 45-46 (1992), *S.C.*, 427 Mass. 414 (1998); *Commonwealth* v. *Farnsworth*, 76 Mass. App. Ct. 87, 98 (2010) ("the constitutional sufficiency of the evidence under *Commonwealth* v. *Latimore*, [*supra* at 677-678], is to be measured upon that which was admitted in evidence without regard to the propriety of the admission").

Finally, the defendant did not come forward with any evidence

c. 269, § 10, adopting the definition of ammunition in § 10(*o*). See St. 2006, c. 48, § 7. The absence of this statutory definition in the version of § 10 applicable here is irrelevant; prior to the 2006 amendments, this court held that ammunition must only be "designed for use in any firearm," without any functionality requirement, to sustain criminal liability under § 10(*h*). *Commonwealth* v. *Mendes*, 44 Mass. App. Ct. 903, 904 (1997), quoting from G. L. c. 140, § 121, as appearing in St. 1973, c. 892, § 1.

to show that he had a valid FID card. See *Commonwealth* v. *Colon*, 449 Mass. 207, 226, cert. denied, 552 U.S. 1079 (2007) (reaffirming that defendant has burden to show proper licensure to possess firearm or ammunition). We therefore conclude that the Commonwealth's evidence was sufficient as to the possession of ammunition charge.

b. *Firearm.* For the firearm offense, the Commonwealth must prove that the defendant (1) possessed (2) a firearm capable of discharging a shot or bullet (3) outside his residence or place of business, and (4) without a license or an FID card. G. L. c. 269, § 10(*a*). G. L. c. 140, § 121. See *Commonwealth* v. *Coren*, 437 Mass. 723, 734 (2002).

The Commonwealth established possession of the firearm on the same basis as possession of the ammunition charge. The defendant similarly did not bring forth evidence of proper licensure. The Commonwealth further proved, for sufficiency purposes, based on the ballistics certificate as to the firearm, that the .44 caliber weapon met the statutory definition. Although that ballistics certificate was also inadmissible under *Melendez-Diaz*, 129 S. Ct. at 2531-2532, we similarly consider it for *Latimore* purposes. See *Commonwealth* v. *DiBenedetto, supra*; *Commonwealth* v. *Farnsworth, supra.*

Finally, the Commonwealth presented sufficient evidence that the apartment was not the defendant's residence or place of business.[6] A police detective testified that the lessee of the apartment, Lynch, had told him that the defendant did not reside in the apartment and only stayed there occasionally.[7] On cross-examination, a police officer testified that he found no papers bearing the defendant's name in the apartment and that the defendant told him the apartment was Lynch's, not his. This evidence, with reasonable inferences in favor of the Commonwealth, constituted sufficient evidence of possession of the

---

[6]The defendant also argues that the judge improperly instructed the jury on the firearm possession charge because she did not discuss the residence requirement. The defendant did not object to the instruction as given. In light of the defendant's own testimony that he did not live at the apartment, we conclude that the absence of the residence requirement in the instructions did not materially influence the verdict and did not create a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999).

[7]The defendant did not object to this hearsay testimony.

firearm outside the defendant's residence.[8] We therefore conclude that the Commonwealth satisfied the *Latimore* standard as to unlawful possession of a firearm.

c. *Cocaine.* Although it is a close question, we conclude, based on the standards of constructive possession recited above, see *Commonwealth* v. *Brzezinski*, 405 Mass. at 409; *Commonwealth* v. *Handy*, 30 Mass. App. Ct. at 780, that the Commonwealth presented insufficient evidence as to the charge of cocaine possession.

In contrast to the charges of unlawful possession of a firearm and ammunition, the Commonwealth presented no evidence that the defendant knew of the presence of cocaine underneath the mattress in the bedroom or in the bedroom closet. The Commonwealth introduced no evidence to show that the defendant stored any of his personal effects in the bedroom or the bedroom closet.[9] Finally, the Commonwealth presented no evidence that the defendant ever accessed the bedroom closet or the underside of the mattress.

The evidence presents a close *Latimore* issue, but we conclude it insufficient to show that the defendant had the ability and intention to exercise dominion and control over the areas where the search uncovered cocaine. See *Commonwealth* v. *Booker*, 31 Mass. App. Ct. 435, 437 (1991) ("Mere presence in the vicinity of a controlled substance . . . does not amount to possession"). The evidence therefore does not support the conviction for possession of cocaine, and we must reverse.

3. *Confrontation clause.* The defendant further complains that the admission of the certificates of analysis identifying the cocaine and marijuana as such, the .44 caliber weapon as an operable firearm, and the six .44 caliber bullets as designed for use in a firearm constituted constitutional error under *Melendez-Diaz*. The Commonwealth's concession that the erroneous admission of the certificates warrants reversal of all the convic-

---

[8]Because the defendant moved for a required finding of not guilty at the close of the Commonwealth's evidence, we do not consider, for *Latimore* purposes, the defendant's testimony that he lived on Maple Court in Roxbury, rather than at apartment 12. See *Commonwealth* v. *Berry*, 431 Mass. at 330 (only evidence at close of Commonwealth's case-in-chief examined).

[9]The firearm and ammunition, as well as the holster, were located in the hallway closet, not the bedroom or the bedroom closet.

tions does not bind us. See *Commonwealth* v. *Poirier*, 458 Mass. 1014, 1015 (2010). We conduct an independent review of whether the admission of the certificates[10] in violation of the confrontation clause warrants reversal.

Despite the absence of an objection to the certificates, we review to determine if their admission was harmless beyond a reasonable doubt. *Commonwealth* v. *Vasquez*, 456 Mass. 350, 352 (2010). "[T]o establish harmlessness beyond a reasonable doubt, the Commonwealth must show that other properly admitted evidence of guilt is overwhelming, in the sense that it is so powerful as to nullify any effect that the improperly admitted evidence might have had on the fact finder or the findings." *Id.* at 362 (internal quotations and citation omitted).

We conclude that admission of the ballistics certificate as to the firearm was not harmless beyond a reasonable doubt, and we must reverse. We conclude that the admission of the ballistics certificate as to the ammunition, however, was harmless beyond a reasonable doubt.

a. *Firearm.* The Commonwealth introduced only a ballistics certificate to show that the firearm met the statutory definition. See G. L. c. 140, § 121 (requiring operability to qualify as a firearm). The jury considered no circumstantial evidence, such as spent shell casings, the smell of gunpowder, or audible shots, suggesting operability. See *Commonwealth* v. *Muniz*, 456 Mass. 166, 172 (2010), citing *Commonwealth* v. *Mendes*, 75 Mass. App. Ct. 390, 397 (2009). The presence of ammunition, without direct evidence that a weapon's firing mechanism is functioning, is insufficient. *Commonwealth* v. *Muniz, supra* at 171-172. As a result, we cannot say that the Commonwealth presented enough evidence to nullify the effect of the erroneously admitted ballistics certificate as to the firearm.

b. *Ammunition.* The Commonwealth also introduced a ballistics certificate to show that the six bullets recovered from the apartment met the applicable statutory definition of ammunition. See G. L. c. 140, § 121, as appearing in St. 1998, c. 180, § 8

[10]Because we conclude that the Commonwealth presented insufficient evidence to convict the defendant of possession of cocaine and the jury acquitted the defendant of possession of marijuana, we need not consider any issue concerning the certificates of analysis as to the cocaine and marijuana.

(requiring ammunition to be "designed for use in any firearm"). Unlike the statutes applicable to narcotics or firearms, § 121's definition of ammunition permits experienced police officers, trained in the use of firearms and ammunition, to identify ammunition as such without scientific examination or testing. See *Commonwealth* v. *Mendes*, 44 Mass. App. Ct. at 904. In combination with admission of the physical ammunition, permitting the jury to observe its appearance, such testimony by police officers renders an erroneously admitted ballistics certificate harmless beyond a reasonable doubt. See *ibid.*

Here, a police officer, after reciting his extensive experience in drug and firearm investigations, identified the six bullets found in the apartment as ammunition by testifying that they were .44 caliber, the same as the weapon recovered. The bullets themselves were admitted as evidence along with the firearm. In addition, the officer testified that he found the ammunition in the same bag as the .44 caliber weapon, further corroborating that it was "designed for use in any firearm." G. L. c. 140, § 121. We hold that this evidence, apart from the ballistics certificate, overwhelmingly proved that the six bullets met the statutory definition of "ammunition," thereby making the admission of the certificate harmless beyond a reasonable doubt. See *Commonwealth* v. *Muniz, supra* at 173; *Commonwealth* v. *Mendes*, 44 Mass. App. Ct. at 904.

4. *Motion to suppress.* The defendant claims that his motion to suppress, based on (1) an improper warrantless protective sweep of the apartment and (2) an improper subsequent search by warrant of the apartment, was improperly denied. We discern no error.

In reviewing the denial of a motion to suppress, we adopt the judge's findings unless clearly erroneous and conduct an independent review of the judge's conclusions of law. *Commonwealth* v. *Gomes*, 453 Mass. 506, 508-509 (2009).

a. *Protective sweep.* Subsequent to a valid entry, a warrantless protective sweep of a dwelling is valid. See *Commonwealth* v. *Silva*, 440 Mass. 772, 783-784, 784 n.15 (2004). See also *Commonwealth* v. *Bowden*, 379 Mass. 472, 478 (1980). Accord *Maryland* v. *Buie*, 494 U.S. 325, 327, 334-336 (1990). Police must limit such a sweep to circumstances where specific and

articulable facts create a reasonable belief that the area investigated as part of the sweep harbors a potentially dangerous individual or, in certain circumstances, instrumentality. See *Commonwealth* v. *Nova*, 50 Mass. App. Ct. 633, 635 (2000); *Commonwealth* v. *Mejia*, 64 Mass. App. Ct. 238, 246-247 (2005).

The articulable facts justifying such a sweep can arise from the violence implicit in an arrestee's criminal history. *Commonwealth* v. *DeJesus*, 70 Mass. App. Ct. 114, 119-120 (2007). It follows that such articulable facts can also arise from the arrestee's conduct prior to the arrest, such as violent flight. See *ibid.*

Here, Williams's violent flight from the officers provided specific and articulable facts justifying the protective sweep of the apartment where the police found him.[11] Williams had assaulted police officers with his vehicle, and the police, therefore, rightly regarded him as dangerous. Contrast *Commonwealth* v. *Dubois*, 44 Mass. App. Ct. 294, 296-297 (1998) (protective sweep impermissible with no evidence of reasonable belief of danger). Moreover, his ability to find safe harbor in the apartment warranted a reasonable belief that other, potentially dangerous confederates might be inside. Contrast *Commonwealth* v. *Nova, supra* at 634-635 (protective sweep impermissible where no evidence of anyone else in apartment and sweep conducted five minutes after arrest of defendant outside apartment).

The motion judge properly denied the defendant's motion to suppress on this basis. Discovery of the defendant's holster in the hallway closet therefore constituted a permissible plain view discovery from a search justified by the protective sweep.

b. *Warrant.* The United States and the Massachusetts Constitutions require that warrants issue only on probable cause. See Fourth Amendment to the United States Constitution; art. 14 of the Declaration of Rights of the Massachusetts Constitution. In order to establish probable cause, "[a]n affidavit must contain enough information for an issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that they reasonably may be expected to be

---

[11]Williams was also wanted for arson in California and had several outstanding warrants in the Commonwealth, providing additional specific and articulable facts warranting a protective sweep.

located in the place to be searched at the time the search warrant issues." *Commonwealth* v. *Cinelli*, 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983). The affidavit must present sufficient specific information to tie the site of the search to the criminal activity suspected. See *Commonwealth* v. *Olivares*, 30 Mass. App. Ct. 596, 600 (1991).

The motion judge properly concluded that the police detective's affidavit presented such specific information.[12] The affidavit described the officers' observation of Williams discarding what appeared to be crack cocaine as he fled from the officers. It also detailed Williams's flight into the building at 80 Walnut Avenue and his subsequent discovery and arrest in the apartment. The evidence of narcotics possession and flight, combined with the apparent assistance Williams received from the defendant in the apartment and the presence of a firearm in the apartment, provided sufficient specific information to create probable cause to believe that the police would find narcotics and firearm-related items in the apartment. The motion judge correctly determined that the warrant properly issued.

5. *Other Fourth and Fifth Amendment claims.* The defendant raises other Fourth and Fifth Amendment challenges to the evidence gathered on September 4, 2003, including (1) that warrantless entry into apartment 12 violated his Fourth Amendment rights; and (2) the defendant's pre-Miranda statement that a firearm was in apartment 12 violated his Fifth Amendment rights. Because the defendant neither raised these issues in his motion to suppress nor objected to the admission of the evidence they yielded at trial, we review to determine error, if any, and if so, whether the admission of this evidence creates a substantial risk of a miscarriage of justice.[13] See *Commonwealth* v. *Sawyer*,

---

[12]We examine the police detective's affidavit without reference to the portions that refer to information gleaned from confidential informants. We agree with the motion judge's conclusion that the affidavit lacked sufficient information to determine the confidential informants' veracity and basis for knowledge. See *Commonwealth* v. *Upton*, 394 Mass. 363 (1985).

[13]The defendant raised these unpreserved claims both in his direct appeal and in his motion for a new trial under the umbrella of ineffective assistance of counsel. The standard is the same in both contexts. *Commonwealth* v. *Madera*, 76 Mass. App. Ct. 154, 160-161 (2010). See *Commonwealth* v. *Delong*, 72 Mass. App. Ct. 42, 47 (2008) (citations omitted) ("we equate 'depriv[ing]

389 Mass. 686, 692 (1983). We conclude that there was no error in failing to suppress that evidence.[14]

a. *Warrantless entry.* The officers entered the apartment with knowledge of the outstanding arrest warrants for Williams but without consent or a search warrant for the apartment. "Absent a search warrant or exigent circumstances, evidence seized as a result of . . . a forcible entry [of a third party's residence to execute an arrest warrant] cannot be used against residents not named in the warrant." *Commonwealth* v. *Dejarnette,* 75 Mass. App. Ct. 88, 92 (2009), citing *Steagald* v. *United States,* 451 U.S. 204, 216, 221 (1981). Here, the police entered the apartment in pursuit of Williams under clearly exigent circumstances. See *Commonwealth* v. *Forde,* 367 Mass. 798, 806 n.3 (1975).

The evidence must show that the police had "reasonable ground to believe that an exigency existed" and that their actions were "reasonable under the circumstances." *Commonwealth* v. *McDermott,* 448 Mass. 750, 766, cert. denied, 552 U.S. 910 (2007) (citation omitted). Specifically, in determining whether exigent circumstances excuse the absence of a search warrant, we consider as factors[15] whether "(1) the crime in question was one of violence and the suspect had been reported to be armed and dangerous; (2) probable cause to believe that the suspect has committed a felony and strong reason to believe[16] the suspect is in the particular dwelling; (3) the entry has been made peaceably (preferably in the daytime); (4) a likelihood that the delay attendant upon securing a warrant would facilitate the destruction of evidence or property; (5) a likelihood that the

---

the defendant of an otherwise available, substantial ground of defence' . . . with 'a substantial risk of a miscarriage of justice' ").

[14]In this analysis, we draw heavily from the facts as recited in the trial judge's careful memorandum and order denying the defendant's motion for a new trial. Because the defendant did not raise these issues in his motion to suppress and thereby deprived the motion judge of the opportunity to make formal findings of fact that would aid in resolving these claims, the trial judge's assessment of the record that developed at trial is invaluable.

[15]Although *Commonwealth* v. *Forde, supra* at 807, identified these factors in the context of excusing the absence of an arrest warrant, we apply them when examining exigency excusing the absence of a search warrant as well. *Commonwealth* v. *Dejarnette, supra* at 93-94.

[16]Reasonable belief, in this context, refers to a standard less than probable cause. See *Commonwealth* v. *Silva,* 440 Mass. at 776-779.

suspect would escape if not promptly apprehended; and (6) some showing of a reasonable basis for believing that delay would subject the officers or others to physical harm." *Commonwealth* v. *DiSanto*, 8 Mass. App. Ct. 694, 700 (1979), cert. denied, 449 U.S. 855 (1980), citing *Commonwealth* v. *Forde*, *supra* at 807.

Here, these factors point to exigent circumstances excusing the absence of a search warrant for entry into apartment 12.[17] Williams was a dangerous fleeing felon, had assaulted police officers with his car as he fled, had outstanding warrants in the Commonwealth and California, and was known by the officers as having prior drug and firearm offenses. Williams was clearly implicated in crimes of violence and constituted a potential threat to the occupants of the building in several ways, including the possibility that he would take a resident hostage. In addition, Williams had already discarded three bags of crack cocaine as he fled from the officers, making it reasonable to believe that he would destroy any evidence in his possession given the opportunity.

The officers also had reason to believe they would find Williams in apartment 12. Having secured the building, the police had probable cause to believe that Williams was inside. Given that the police had already searched several of the apartments in the building, and given the continued exigency, we conclude that the police had sufficient reason to believe that they would find Williams in one of the remaining apartments, including apartment 12.[18]

Finally, the officers entered peaceably, rather than violently and by force. They knocked and announced their presence. Hearing no answer, a representative of the building management opened apartment 12's door with a key.

The officers had ample reason to believe that exigencies made it impracticable for them to obtain a search warrant for apartment 12 to execute any of the several arrest warrants for Williams or to apprehend him based on the felonious conduct

---

[17]There was no evidence to suggest that the arrest warrants for Williams named the defendant or Lynch.

[18]Given the exigency and the ongoing search, the officers did not need probable cause to believe that Williams was in a specific apartment remaining to be searched. See note 16, *supra*.

they witnessed earlier. The evidence further demonstrates that they acted reasonably and appropriately in the circumstances in order to confront a dangerous fleeing felon who had already assaulted police officers less than thirty minutes earlier.[19] Exigent circumstances therefore justified the absence of a search warrant to enter the apartment, and the entry was lawful.

b. *Pre-Miranda statement.* Police must give Miranda warnings prior to custodial interrogation. *Commonwealth* v. *O'Brien*, 432 Mass. 578, 585 (2000). See *Miranda* v. *Arizona*, 384 U.S. 436, 467-479 (1966). Even if a defendant is in custody, police officers may ask him questions immediately necessary to remedy the potential threat to themselves or the public posed by an unaccounted-for firearm. See *New York* v. *Quarles*, 467 U.S. 649, 655-657 (1984); *Commonwealth* v. *Alan A.*, 47 Mass. App. Ct. 271, 274-275 (1999).

Here, the protective sweep uncovered objectively reasonable evidence, the presence of the holster, indicating that a firearm, potentially posing a threat to the officers and the public, was nearby. The police question specifically directed to the presence and location of a weapon did not require Miranda warnings. See *New York* v. *Quarles, supra*; *Commonwealth* v. *Alan A., supra.* See also *Commonwealth* v. *Dillon D.*, 448 Mass. 793, 796-797 (2007) (juvenile possessing plastic bag containing numerous bullets while in public school permitted police to invoke public safety exception to Miranda warnings); *Commonwealth* v. *Kitchings*, 40 Mass. App. Ct. 591, 598 (1996) (objectively reasonable need to protect police from immediate danger associated with weapon excused failure to give Miranda warnings before demanding to know where gun was located).

6. *Other constitutional issues.* The defendant raises other constitutional arguments. None of them is persuasive.

a. *Post-Miranda silence.* The defendant claims that a violation of his Fifth Amendment right to remain silent occurred

---

[19]The officers did act during the early evening and only after having secured the building, thus making it unlikely that Williams would escape if the police delayed and obtained a warrant. These factors favor the defendant, but they do not overcome the evidence that Williams was dangerous, was fleeing from officers after having assaulted them, had demonstrated his willingness to destroy evidence by discarding three bags of crack cocaine he had in his possession, and had outstanding arrest warrants.

when the prosecutor introduced evidence, for impeachment purposes, of the defendant's postarrest silence. The prosecutor asked the defendant about his failure to include in his suppression affidavit threats made by a police officer. The defendant claims this questioning violated his right to remain silent. As the error, if any, was unpreserved, we examine only for error creating a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

Direct evidence of the defendant's postarrest, post-Miranda silence is prohibited. *Commonwealth* v. *Rivera*, 425 Mass. 633, 639 (1997). However, a defendant who testifies on his own behalf subjects himself to impeachment by prior inconsistent statements. *Ibid.* See *Harris* v. *New York*, 401 U.S. 222, 225-226 (1971). "Such inconsistencies include the omission from a pretrial statement where it would have been natural to include the omitted fact." *Commonwealth* v. *Rivera, supra.*

The defendant stated in his affidavit accompanying his motion to suppress that he did not inform the police of the location of any firearm, admit to owning the recovered firearm, or make any voluntary statements at all. Given the defendant's specific statements about the firearm, it would have been natural to include the assertion that an officer threatened to place his daughter into DSS custody if the defendant did not admit to the firearm's ownership. Cross-examination of the defendant on this topic was therefore quite proper. There was no error.

b. *Right not to testify.* The defendant contends that the prosecutor's stated intention to move for a mistrial if the defendant did not testify, and the judge's statement that she would favorably entertain such a motion, deprived the defendant of his right not to testify. The issue is unpreserved, so we will reverse only if any error constituted a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman, supra.*

There was no error. The threat of a motion for a mistrial and the suggestion that the judge would favorably entertain such a motion did not constitute coercion and did not burden the defendant's exercise of his right not to testify. Neither the judge nor the prosecutor threatened additional punishment or other inappropriate treatment. Contrast *Letters* v. *Commonwealth*, 346 Mass. 403, 404-405, 407-408 (1963) (judge coerced plea during

trial by threatening defendants with consecutive life sentences); *Commonwealth* v. *Carter*, 50 Mass. App. Ct. 902, 903 (2000) (judge coerced guilty plea when defendant was told he would receive sentence three times longer if he was found guilty after trial). Moreover, because the record reveals ample evidence that the conduct of the judge and prosecutor did not influence the defendant's decision to testify, any error would have had no effect on the trial and would not have created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999).

c. *Right to present a defense.* The defendant further argues that the judge's sustaining of several of the prosecutor's objections during the defendant's direct examination deprived him of his right to present a defense. There was no error.[20]

Both the United States and the Massachusetts Constitutions protect a defendant's right to present his defense. See Sixth Amendment to the United States Constitution; art. 12 of the Declaration of Rights of the Massachusetts Constitution. See also *Rock* v. *Arkansas*, 483 U.S. 44, 52-53 (1987); *Commonwealth* v. *Francis*, 375 Mass. 211, 213-214, cert. denied, 439 U.S. 872 (1978). This right includes calling witnesses, but it yields to "legitimate demands of the adversarial system" as determined within the discretion of the judge. *Commonwealth* v. *Durning*, 406 Mass. 485, 495 (1990) (citation omitted). "Evidentiary rules of exclusion 'do not abridge an accused's right to present a defense so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve." ' " *Commonwealth* v. *McAfee*, 430 Mass. 483, 491 n.3 (1999) (citation omitted).

Here, the judge sustained the prosecutor's repeated objections to questions calling for the defendant to recount prior statements made by others. These questions called for hearsay testimony, making them subject to exclusion absent demonstration of an applicable exception, see *Commonwealth* v. *Evans*, 439 Mass. 184, 193, cert. denied, 540 U.S. 923, 973 (2003), or of sufficient reliability and trustworthiness so that their exclusion might interfere with the right to present a defense. See *Commonwealth* v. *McAfee*, *supra* at 491. The judge did not

---

[20]The record is unclear as to whether the defendant preserved this claim. However, because there was no error, we need not reach the preservation issue.

arbitrarily determine that the defendant had failed to establish a hearsay exception or that the evidence was insufficiently reliable and trustworthy. There was no error.

d. *Second Amendment.* The defendant argues that the incorporation of the Second Amendment right to keep and bear arms into the Fourteenth Amendment, accomplished by *McDonald* v. *Chicago*, 130 S.Ct. 3020 (2010), renders the statute for possession of ammunition without an FID card, under which the defendant was convicted, unconstitutional.

*McDonald* made applicable to the States an individual's right to possess firearms in the home as previously announced in *District of Columbia* v. *Heller*, 554 U.S. 570 (2008). For our purposes, *Heller* invalidated a series of District of Columbia laws prohibiting the carrying of a firearm without a license and proper registration. *Id.* at 574-576. The decision focused on the right to keep operable firearms in the home. *Id.* at 628-631, 636.

Assuming without deciding that *Heller* and *McDonald* apply to ammunition, an issue we need not reach, the Second Amendment does not protect the defendant in this case because the Commonwealth established at trial that apartment 12 was not the defendant's home. Moreover, *Heller* and *McDonald* both expressly affirm the Commonwealth's right to regulate in this area with, inter alia, appropriate licensing requirements. See *Heller, supra* at 626-628 & n.26; *McDonald, supra* at 3047. The defendant's criminal history precluded his compliance with the Commonwealth's valid licensing requirements. See G. L. c. 140, § 131(*d*)(i). Accordingly, *Heller* and *McDonald* provide no basis for concluding that the defendant was unconstitutionally convicted of possession of ammunition without an FID card.[21]

7. *Evidentiary issues.* The defendant raises a series of evidentiary and prosecutorial misconduct arguments that are unpersuasive.

a. *The defendant's criminal history.* The defendant complains

---

[21]We note that the defendant raises the same argument as to the unlawful possession of a firearm statute. The defendant's conviction of unlawful possession of a firearm is being reversed on another ground. In any event, the defendant's argument would fail for the same reason as discussed above.

that the judge improperly permitted the prosecutor to ask the defendant about his "other problems with the law." The defendant also argues that evidence about his prior contact with one of the officers who searched the apartment and arrested him, elicited both from the defendant and from police officers, was similarly prejudicial. While the defendant objected to this questioning,[22] "[t]he judge's decision to admit such evidence will not be disturbed absent a showing of palpable error." *Commonwealth* v. *Mullane*, 445 Mass. 702, 708 (2006), citing Commonwealth v. *Gollman*, 436 Mass. 111, 115 (2002).

Evidence of a defendant's prior bad acts to show bad character or propensity to commit the crime charged is inadmissible. *Commonwealth* v. *Helfant*, 398 Mass. 214, 224 (1986). See Mass. G. Evid. § 404(b) (2011). Generalized evidence of unspecified prior criminal acts will not warrant reversal if cumulative of specific, properly admitted evidence. *Commonwealth* v. *Carter*, 423 Mass. 506, 515 (1996). See *Commonwealth* v. *Cefalo*, 381 Mass. 319, 333 (1980). We are troubled by the prosecutor's questioning. Notwithstanding our concern, there is no palpable error.

The prosecutor's questions about the defendant's unspecified "problems with the law" were cumulative of already properly admitted criminal history evidence. The same analysis applies to the testimony that a certain police officer had encountered the defendant before and was familiar with him. We discern no palpable error in the admission of this testimony.[23]

b. *Police procedures evidence.* The defendant argues that the prosecutor elicited impermissible evidence about police procedures in applying for search warrants and conducting protec-

---

[22]The defendant did not object to the questioning and testimony regarding his prior involvement with a specific officer who was also a witness for the Commonwealth. We nevertheless consider the issue fairly raised by the defendant's objection to the admission of his "other problems with the law."

[23]We are further persuaded that this questioning was not palpable error because, before trial, the judge permitted the Commonwealth to introduce some of the defendant's criminal convictions for impeachment purposes were he to testify. The prosecutor did not introduce certified copies of these convictions and, instead, asked the vague, imprecise questions here. Because these questions had a good faith basis, had been the subject of a pretrial determination, and were never referred to again during the remainder of the trial or in closing argument, we conclude that there was no palpable error.

tive sweeps. The defendant did not preserve this issue. While we are similarly troubled by this questioning, we will reverse only if any error created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. at 563-564.

Where, as here, probable cause to search is not a live issue at trial, the prosecutor may not elicit irrelevant and unfairly prejudicial evidence of the procedures and approvals necessary to obtain a search warrant. *Commonwealth* v. *Sapoznik*, 28 Mass. App. Ct. 236, 245-246 (1990). At the same time, evidence tending to show relevant context or continuity is admissible. See *Commonwealth* v. *Serrano*, 74 Mass. App. Ct. 1, 6 (2009) (evidence properly admitted because provided context rather than motive).

The complained of testimony provided some relevant context. The defendant's allegations of police misconduct made testimony that the police followed proper procedures relevant in order to disprove the defendant's allegations. The evidence was also relevant to demonstrate the context and continuity of the officers' actions during the investigation of the defendant, Williams, and apartment 12. There was no error.

c. *Improper cross-examination.* The defendant claims that it was error for the prosecutor to ask him whether other trial witnesses were lying when they made certain statements. This issue is also unpreserved, so we review for error creating a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. at 563-564.

The prosecutor may not ask the defendant to comment on the credibility of another witness. See, e.g., *Commonwealth* v. *Clemente*, 452 Mass. 295, 335 (2008), cert. denied, 555 U.S. 1181 (2009). But where, as here, such questioning is isolated and consists of few questions, the error does not create a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Johnson*, 412 Mass. 318, 328 (1992) (collecting cases). Contrast *Commonwealth* v. *Triplett*, 398 Mass. 561, 566 n.5 (1986) (cross-examination questions calling for defendant to assess other witness's credibility "permeated the entire cross-examination"). We conclude that the brevity of this isolated line of cross-examination did not create such a substantial risk.

d. *Improper closing argument.* The defendant finally contends

that the prosecutor impermissibly introduced facts not in evidence in her closing argument. Specifically, the defendant complains of the prosecutor's statements that the defendant brought the firearm to the apartment 12 and that Williams could have visited apartment 12 before in order to deliver drugs.

Although no direct evidence existed for these claims, there was no error. The prosecutor, as she may, argued only based on the evidence and reasonable inferences drawn therefrom. See *Commonwealth* v. *Semedo*, 456 Mass. 1, 13 (2010). There was evidence to show that the defendant knew where the firearm was in apartment 12, that Williams may be involved in the drug trade, and that Williams quickly found shelter in apartment 12 with the defendant. The prosecutor's suggestions that the defendant brought the firearm to the apartment, that the defendant and Williams were associated in some fashion, and that the defendant also may be involved in the drug trade in some capacity were based on reasonable inferences from this evidence. There was no error.

8. *Motion for new trial.* In light of our outcome, we need not address the defendant's claims as to improper denial of his motion for new trial.

9. *Conclusion.* The judgment as to possession of ammunition without an FID card is affirmed. The judgment as to possession of a class B substance is reversed; that verdict is set aside; and as to that charge, judgment shall enter for the defendant. The judgment as to unlawful possession of a firearm is reversed; that verdict is set aside; and that charge is remanded to Superior Court.

*So ordered.*