NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

16-P-1098                                    Appeals Court

COMMONWEALTH vs. BENJAMIN B. SAYWAHN, JR.

No. 16-P-1098.

Hampden.     April 13, 2017. - June 15, 2017.

Present: Kafker, C.J., Grainger, & Kinder, JJ.

Firearms. Search and Seizure, Protective sweep. Constitutional
    Law, Search and seizure.

Complaint received and sworn to in the Springfield Division
of the District Court Department on February 4, 2016.

A pretrial motion to suppress evidence was heard by William
P. Hadley, J.

An application for leave to prosecute an interlocutory
appeal was allowed by Francis X. Spina, J., in the Supreme
Judicial Court for the county of Suffolk, and the appeal was
reported by him to the Appeals Court.

David L. Sheppard-Brick, Assistant District Attorney, for
the Commonwealth.
Thomas C. Maxim for the defendant.

KAFKER, C.J. During a protective sweep of the home of the

defendant, Benjamin B. Saywahn, Jr., conducted during the

execution of a warrant for his arrest, police discovered a

firearm. The defendant was subsequently charged with possession of a firearm and ammunition without an identification card, G. L. c. 269, § 10(h), improper storage of a firearm, G. L. c. 140, § 131L(a) & (b), and receiving stolen property, G. L. c. 266, § 60.[1] The defendant moved to suppress "the fruits of the sweep" on the ground that the protective sweep was not justified by the officers' reasonable belief that a dangerous individual in the home posed a threat to the officers. The motion judge agreed and granted the motion. The Commonwealth appeals pursuant to Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996), claiming that the protective sweep was justified.[2] We affirm.

Background. "We summarize the pertinent facts from the judge's findings on the motion to suppress, supplemented where appropriate by uncontroverted testimony from the suppression hearing." Commonwealth v. Matos, 78 Mass. App. Ct. 156, 157 (2010) (quotation omitted). On February 1, 2016, a warrant issued in the State of Connecticut for the defendant's arrest. Because the defendant resided in Springfield, a member of the Windsor, Connecticut police department contacted Detective

---

[1] The defendant was also considered to be a fugitive from justice, G. L. c. 276, § 20A.

[2] A single justice of the Supreme Judicial Court ordered the case to be considered by this court. See Mass.R.Crim.P. 15(a)(2).

Christopher Bates of the Springfield police department with regard to the warrant. Detective Bates learned that the defendant was wanted in connection with a shooting that had occurred during the course of a marijuana sale in Windsor. He learned that the victim, the defendant, and an unidentified third person were involved in the shooting, that the victim had been shot in the face, and that no firearm had been recovered.

At approximately 2:30 P.M. on February 3, 2016, Detective Bates and six to seven other members of the Springfield police department went to the defendant's home to execute the arrest warrant. All of the officers were armed, with their weapons holstered, and in uniform or wearing police insignia. The officers knocked, and the defendant answered the door after twenty or thirty seconds. Four to five officers entered the home; the other officers went to the rear and sides of the home. The officers immediately recognized the defendant from his photograph.[3] The officers asked the defendant whether he was the person named in the warrant, and he responded, "Yes, I am." The officers then placed the defendant in handcuffs just inside the front door. The defendant did not resist or attempt to flee.

---

[3] Detective Bates obtained the defendant's photograph from the registry of motor vehicles using the biographical information he had received about the defendant. Detective Bates had a copy of the photograph with him during the execution of the arrest warrant.

Detective Bates patted down the defendant for weapons and found none. Lieutenant Steven Kent then asked the defendant whether anyone else was in the home. The defendant did not make eye contact and mumbled something inaudible. Lieutenant Kent asked him again whether anyone else was in the home. The defendant hesitated and then said, "[N]o."

Based on the defendant's mumbled response and hesitation, Lieutenant Kent decided to conduct a protective sweep to ensure that there was no one else in the home who might pose a danger to the officers.[4] Lieutenant Kent proceeded to the second floor of the home and opened the door to a bedroom. As he looked under the bed, he noticed a firearm protruding from between the box spring and mattress. He completed the sweep of the home and, after determining that the defendant was not licensed to possess a firearm, secured a search warrant. The police later returned with the warrant and recovered the firearm.

Standard of review. In reviewing the grant "of a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error and accord substantial deference to the judge's ultimate findings." Commonwealth v. Carr, 458 Mass. 295, 298 (2010) (citation and quotation omitted). The ultimate

---

[4] One of the officers who participated in the sweep testified that the officers had learned that the home was a foster home, and that the defendant lived there with his foster family. The officers did not know, however, how many people lived in the home.

legal conclusions to be drawn from the findings, however, are matters for review by this court. Id. at 299.

Discussion. "While executing an arrest warrant, police may conduct a protective sweep, 'a quick and limited search of the premises' to protect the officers' safety, if they have a reasonable belief based on 'specific and articulable facts' that the area [to be swept] could harbor a dangerous individual." Matos, 78 Mass. App. Ct. at 159, quoting from Maryland v. Buie, 494 U.S. 325, 327, 334 (1990). Among the factors to be considered are (1) "the violence implicit in the crime for which the defendant is sought and the violence implicit in his criminal history," Commonwealth v. DeJesus, 70 Mass. App. Ct. 114, 119 (2007); (2) the location of the arrest in relation to the area to be swept, Commonwealth v. Colon, 88 Mass. App. Ct. 579, 581-582 (2015); (3) the defendant's resistance or cooperation at the time of arrest, Commonwealth v. McCollum, 79 Mass. App. Ct. 239, 251 (2011); and, of course, (4) the presence, or at least the suspicion of the presence, of other individuals, including those known to be dangerous, in the area, Commonwealth v. Nova, 50 Mass. App. Ct. 633, 634-636 (2000). Finally, the sweep must last "no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." Buie, 494 U.S. at 335-336.

In the present case, we conclude that the protective sweep of the bedroom on the second floor of the defendant's home was not justified, despite the violent crime for which the defendant was arrested, when the defendant was immediately handcuffed and secured in the front doorway of his home in a peaceful manner, and there was no indication of anyone else present in the home.

We begin by recognizing that the defendant was wanted in connection with a shooting, which "clearly justifies caution." Colon, 88 Mass. App. Ct. at 581. This is obviously an important factor, as "[t]he risk of danger in the context of an arrest in the home is as great as, if not greater than, it is in an on-the-street or roadside investigatory encounter." DeJesus, 70 Mass. App. Ct. at 119, quoting from Buie, 494 U.S. at 333. This factor must, however, be considered along with others. "[W]hile the charge to which the warrant relates is generally a relevant factor bearing on our consideration of the appropriate conduct of arresting officers, it must be viewed in context." Colon, supra. In the instant case, the nature of the crime for which the defendant was wanted is more difficult than usual to evaluate: although the defendant was allegedly present, along with another unidentified suspect, at a marijuana sale during which someone was shot, the officers did not know what role the

defendant played in the shooting or his criminal history.[5] Compare DeJesus, 70 Mass. App. Ct. at 120 (protective sweep justified by arrest warrant for armed carjacking and known record of "violent felonies and firearm possession charges"); Matos, 78 Mass. App. Ct. at 159 (same; arrest warrant for drug distribution and "prior arrests related to firearms offenses").

Other factors cut against the need for the protective sweep. The defendant was already handcuffed and secured at the front door when the officers went upstairs to conduct the sweep.[6] At this point, the arrest had been completed, and the officers could have easily removed the defendant via the front door safely, without needing to enter a bedroom on the second floor. See Colon, 88 Mass. App. Ct. at 581-582 (sweep not justified where defendant opened door, said, "{L]et's go," and attempted to leave, yet officers brought him back inside home, handcuffed him, and conducted sweep). See also Nova, 50 Mass. App. Ct. at 634-636 (sweep not justified where officers returned to apartment after chasing defendant through apartment and apprehending him at rear of building). Here, the defendant

---

[5] Lieutenant Kent testified that he had "nothing to do with the Connecticut investigation whatsoever." Defense counsel argued in closing that "there was no testimony whatsoever about the history of [the defendant]" and whether the officers knew whether the defendant had a record of any "violent felonies."

[6] Detective Bates testified that the defendant was placed in handcuffs in the "living room area" of the home, "right when you enter the doorway."

appeared, by all accounts, completely compliant and cooperative throughout the interaction.  He answered the door promptly, admitted to being the person named in the warrant, and did not resist or attempt to flee.  See Colon, 88 Mass. App. Ct. at 581 (officers had "achieved their objective without conflict and in fairly short order").

Importantly, there was no objective indication of anyone else in the home and no facts suggesting that the officers needed to secure the bedroom on the second floor to protect themselves.  See DeJesus, 70 Mass. App. Ct. at 116, quoting from Buie, 494 U.S. at 334 ("to 'look [beyond] closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched[,] . . . there must be articulable facts which . . . would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene'").  As the motion judge explained, "[T]he police made no observations of individuals entering or leaving the home, and they heard no sounds coming from any other location in the home."  Thus, "[b]eyond Lieutenant Kent's concern that the defendant was not being truthful, there was no direct or circumstantial evidence to support an inference that anyone but the defendant was home or posed a danger to the police."  In these circumstances, the defendant's mumbled initial response to questions about whether

anyone else was present was not sufficient to justify a sweep for other individuals.[7]  See Commonwealth v. Wren, 391 Mass. 705, 708 n.2 (1984) (attempt to avoid contact with police "not enough in itself to justify a suspicion").  See also Nova, 50 Mass. App. Ct. at 635 (sweep not justified where "there were no articulable facts to support an inference that anyone was in the apartment at the time of the sweep -- let alone anyone who posed a danger to the police" [quotation omitted]); Colon, 88 Mass. App. Ct. at 582 ("there was no evidence of danger to be expected from the apartment").  Compare Commonwealth v. Walker, 370 Mass. 548, 552, 556-557, cert. denied, 429 U.S. 943 (1976) (officers heard noises and saw individual peering from window); DeJesus, 70 Mass. App. Ct. at 115-116 (officers saw two women in living room and learned that defendant's father was upstairs and another person was in cellar).

In sum, "any perception of a threat to officers was simply too speculative here to meet constitutional requirements" for a protective sweep of an upstairs bedroom, Nova, 50 Mass. App. Ct. at 635, when the defendant, the only person posing a potential danger to the police in the home, appeared by all objective

---

[7] We further note that the defendant eventually answered "no" in response to this question.  Also, although there was another suspect involved in the crime for which the defendant was arrested, the shooting had occurred in Connecticut, not Massachusetts, and had taken place at least two days before the sweep, thus diminishing any concern that the other suspect might be found with the defendant.

evidence to be home alone, and was handcuffed and peacefully secured at the front door.  We therefore affirm the order allowing the motion to suppress.

<u>So ordered</u>.